## UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                              )
                                    )
SKYFUEL, INC.,                      )        Case No. 19-12400-JGR
                                    )        Chapter 11
            Debtor.                 )

## <u>PLAN OF REORGANIZATION FOR SKYFUEL, INC.</u>

David W. Parham, Esq.
Texas SBN:  15459500
Amy M. Leitch, Esq.
Colorado Bar. No. 46837
**AKERMAN LLP**
2001 Ross Avenue, Suite 3600
Dallas, TX  75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339

**ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

**DATED: January 29, 2021**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION .................. 1

    A.    Defined Terms ................................................................................ 1

    B.    Rules of Interpretation ................................................................... 7

ARTICLE II CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............ 8

    1.    **Classification Generally** ............................................................ 8

    2.    **Unclassified Claims** ................................................................... 8

    3.    **Classified Claims** ....................................................................... 8

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS ................................. 8

    1.    **Administrative Expense Claim Applications and Deadline** ........... 8

    2.    **Treatment of Allowed Administrative Expense Claims** ............... 8

    3.    **Administrative Tax Claims** ........................................................ 9

    4.    **Section 505** ................................................................................ 9

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS ..................................... 9

    1.    **Class 1: Priority Claims** ............................................................ 9

    2.    **Class 2: General Unsecured Claims** ........................................ 10

    3.    **Class 3: Equity Interests** .......................................................... 10

ARTICLE V ACCEPTANCE OR REJECTION OF PLAN ................................. 10

    1.    **Impairment Controversies** ...................................................... 10

    2.    **Classes and Claims Entitled to Vote** ....................................... 10

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN ...................... 10

    1.    **Overview** ................................................................................ 10

    2.    **Sale of the Debtor's Equity Interest** ........................................ 11

    3.    **Distributions Under this Plan** .................................................. 11

    4.    **Distribution of the Assets Under this Plan** .............................. 11

    5.    **Corporate Existence** ................................................................ 11

    6.    **Vesting of Assets Free and Clear** ............................................ 11

    7.    **No Assumption of Liabilities** ................................................... 11

    8.    **New Organizational Documents** .............................................. 12

    9.    **Directors and Officers of Reorganized Debtor** ........................ 12

    10.    **Operations of the Debtor Between the Confirmation Date and the Effective Date** ................................................................................. 12

    11.    **Terms of Injunction or Stays** .................................................. 12

ARTICLE VII TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS .. 12

1.    **Objection Deadline**................................................................... 12

2.    **Creditor Response to Objection** .............................................. 12

3.    **No Waiver of Right to Object** .................................................. 12

4.    **Allowance of Disputed Claims** ................................................ 13

5.    **Amendments to Claims; Claims Filed After the Confirmation Date**............ 13

6.    **No Distribution Pending Allowance** ....................................... 13

7.    **Disputed Claim Reserve** .......................................................... 13

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 14

1.    **Record Date for Distributions** ................................................. 14

2.    **Delivery of Distributions** ......................................................... 14

3.    **Unclaimed Distributions** .......................................................... 14

4.    **Transactions on Business Days** ............................................... 14

5.    **Time Bar to Cash Payment by Check** ..................................... 15

6.    **Compliance with Tax Requirements** ....................................... 15

7.    **No Payments of Fractional Dollars** ......................................... 15

8.    **Interest on Claims** ................................................................... 15

9.    **Setoff and Recoupment** ........................................................... 15

10.   **Default** ...................................................................................... 15

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................................................................................. 16

1.    **Assumption of Executory Contracts** ....................................... 16

ARTICLE X EFFECTS OF PLAN CONFIRMATION ............................................................ 16

1.    **Discharge** ................................................................................. 16

2.    **Plan Injunction** ........................................................................ 16

3.    **No Liability for Solicitation or Participation** ......................... 17

ARTICLE XI CONDITIONS PRECEDENT ........................................................................... 17

1.    **Conditions Precedent to Confirmation and Effectiveness of Plan** ................. 17

2.    **Non-Occurrence of the Effective Date** ................................... 17

3.    **Notice of the Effective Date** .................................................... 17

ARTICLE XII RELEASE, INJUNCTIVE AND RELATED PROVISIONS .............................. 17

1.    **Compromise and Settlement** .................................................... 17

2.    **Releases by the Debtor** ............................................................ 17

3.    **Exculpation** .............................................................................. 18

4.    **Third Party Releases** ............................................................... 19

5.    **Injunction** ................................................................................. 19

6.    **Releases of Liens** ..................................................................... 19

2

ARTICLE XIII RETENTION OF JURISDICTION AND CLAIMS ........................................ 20

   1.   **Jurisdiction of Bankruptcy Court** ................................................................ 20

   2.   **Failure of Bankruptcy Court to Exercise Jurisdiction** .................................... 21

   3.   **No Creation of Jurisdiction** ........................................................................ 21

   4.   **Retention and Preservation of General Rights** ............................................ 21

   5.   **Retention and Preservation of Specific Rights** ........................................... 21

ARTICLE XIV MISCELLANEOUS PROVISIONS ......................................................... 22

   1.   **Payment of Statutory Fees** ....................................................................... 22

   2.   **Modification of this Plan** .......................................................................... 22

   3.   **Revocation or Withdrawal of this Plan** ....................................................... 22

   4.   **Substantial Consummation of Plan** ............................................................ 22

   5.   **Exercise of Liens** .................................................................................... 22

   6.   **Rights to Payment and Pro Rata Distributions** ............................................ 23

   7.   **Successors and Assigns** .......................................................................... 23

   8.   **Binding Effect** ........................................................................................ 23

   9.   **Confirmation Order Controls** .................................................................... 23

   10.  **Governing Law** ....................................................................................... 23

   11.  **Severability** ........................................................................................... 23

   12.  **Automatic Stay** ...................................................................................... 23

   13.  **Reservation of Rights** ............................................................................. 23

   14.  **Section 1146 Exemption** .......................................................................... 24

   15.  **Section 1125(e) Good Faith Compliance** ..................................................... 24

   16.  **Further Assurances** ................................................................................. 24

   17.  **Service of Documents** ............................................................................. 24

   18.  **Notices and Distributions** ........................................................................ 24

   19.  **Filing of Additional Documents** ................................................................. 24

   20.  **Incorporation of Exhibits** ......................................................................... 25

   21.  **No Admissions** ....................................................................................... 25

   22.  **No Stay of Confirmation Order** .................................................................. 25

   23.  **Aid and Recognition** ............................................................................... 25

ARTICLE XV CONFIRMATION REQUEST ............................................................... 25

Pursuant to Section 1121 and other applicable sections of the United States Bankruptcy Code, SkyFuel, Inc., the debtor and debtor-in-possession in the above-captioned case (the "Debtor") hereby respectfully proposes the following *Plan of Reorganization for SkyFuel, Inc.*:

## INTRODUCTION

This Plan provides for a Sale of the Equity Interest of the Debtor to Kaidi and the payment of the Proceeds of the Sale to all Creditors with Allowed Claims.

Transmitted with this Plan is a copy of the Disclosure Statement required by Section 1125 of the Bankruptcy Code. The Disclosure Statement is provided to help Creditors understand this Plan. The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business and operations, risk factors, and other related matters. The Disclosure Statement also provides a summary of this Plan. All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement before voting to accept or reject this Plan.

The Debtor believes that this Plan will accomplish the objectives of Chapter 11. Additionally, the Debtor believes that the Plan presents the most advantageous outcome for all the Debtor's Creditors and, therefore, confirmation of the Plan is in the best interests of the Estate. The Debtor recommends that Creditors **vote to accept the Plan**.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Defined Terms**

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

1.    "**Accounts Receivable**" means any and all amounts owing to the Debtor or the Estate at any time prior to the Effective Date, even if disputed, unpaid, or subject to litigation.

2.    "**Administrative Tax Claim**" means any *ad valorem* tax claim assessed against, or payable by, the Debtor or the Estate or their property for or on account of a period after the Petition Date.

3.    "**Administrative Expense Claims Bar Date**" means the day that is thirty (30) days after the Effective Date.

4.    "**Administrative Expense Claim**" means a Claim for any cost or expense of administration of the Chapter 11 Bankruptcy Case under Section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.

5.    "**Allowed**" means with respect to any Claim or Equity Interest, except as otherwise provided herein: (i) a Claim or Equity Interest that has been scheduled by the Debtor in its Schedules and not identified as being disputed, contingent or unliquidated and as to which the

Debtor, the Reorganized Debtor or other parties-in-interest have not Filed an objection by the Claims Objection Deadline; (ii) a proof of Claim or Equity Interest that has been timely Filed and as to which the Debtor, the Reorganized Debtor, or other parties-in-interest have not Filed an objection by the Claims Objection Deadline; (iii) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (iv) a Claim or Equity Interest that is allowed: (a) in any stipulation addressing the amount, nature, and priority of the Claim or Equity Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation with the Debtor or the Reorganized Debtor, as applicable, addressing the amount, nature, and priority of the Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (v) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (vi) a Disputed Claim as to which a proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline.

6.    "**Allowed Administrative Expense Claim**" means: (i) an Administrative Expense Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; and (ii) an Administrative Expense Claim which: (a) is incurred by the Debtor after the Petition Date (including gap-period claims) in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Expense Claim status; (b) is not disputed by the Debtor; and (c) does not require approval from the Bankruptcy Court to become Allowed.

7.    "**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

8.    "**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

9.    "**Amended Bid Procedures Motion**" means the Amended Motion for Entry of an Order (A) Approving Bidding and Auction Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction, Sale Hearing, and other Dates and Deadlines, (C) Approving Procedures for the Assumption and Assignment of Contracts and Leases and Related Cure Procedures, and (D) Granting Related Relief dated December 27, 2019 and docketed at ECF No. 185.

10.    "**Assumed Liabilities**" means debts, liabilities, and obligations of the Debtor and the Estate, at any time prior to the Effective Date, that the Reorganized Debtor specifically and expressly assumes the obligation to pay under this Plan.

11.    "**Avoidance Actions**" means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

12.    "**Bankruptcy Case**" means Bankruptcy Case No. 19-12400-JGR in the Bankruptcy Court.

13.    "**Bankruptcy Code**" means 11 U.S.C. §§ 101, et. seq., in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such

2

amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

14. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Colorado, having jurisdiction over the Bankruptcy Case and, by virtue of the automatic reference of all bankruptcy cases implemented by Rule 84.1 of the Local Rules of Practice of the United States District Court for the District of Colorado – Civil, the United States Bankruptcy Court for the District of Colorado.

15. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

16. "**Bar Date**" means October 28, 2019, for all Claims.

17. "**Bid Term Sheet**" means the offer from Kaidi made by letter dated February 7, 2020, and addressed to Counsel for the Debtor, as amended or supplemented.

18. "**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

19. "**Causes of Action**" means all claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of any of the Debtor, the Debtor-in-Possession and/or the that are or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

20. "**Claim**" means a claim against the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is otherwise defined in Section 101(5) of the Bankruptcy Code, and arising or deemed to have arisen at any time prior to the Effective Date.

21. "**Claims Objection Deadline**" means the date by which parties authorized by the Plan may File any objection to a Claim, which date shall be sixty (60) days after the Effective Date, except with respect to Administrative Expense Claims as otherwise provided for herein and with respect to Disputed Claims.

22. "**Claims Register**" means the official claims registers in the Debtor's Bankruptcy Case held by the Clerk of the Bankruptcy Court.

23. "**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

24. "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

25.     "**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

26.     "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

27.     "**Creditor**" means the holder of any Claim entitled to Distributions under this Plan with respect to such Claim.

28.     "**Cure Claim**" means a Claim based upon a Debtor's monetary defaults under an executory contract or unexpired lease at the time such contract or lease is assumed by that Debtor under Section 365 of the Bankruptcy Code.

29.     "**Debtor**" or "**Debtor-in-Possession**" means the above-captioned debtor and debtor-in-possession specifically identified on the cover page to this Plan.

30.     "**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, a Claim or portion thereof that: (i) has been disallowed by a Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not Filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been Filed or deemed Filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

31.     "**Disclosure Statement Order**" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on [●], 2021.

32.     "**Disclosure Statement**" means the Disclosure Statement for the Debtor's Plan of Reorganization, dated [●], 2021, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

33.     "**Disputed**" means any Claim or any portion thereof which is neither an Allowed Claim nor is a Disallowed Claim as of the close of the Claims Objection Deadline. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of Distribution under this Plan unless the Debtor, the objecting party, and the holder thereof agree otherwise or unless otherwise ordered by the Bankruptcy Court; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, as of the Claims Objection Deadline, shall be a Disputed Claim unless and until the entry of a Final Order providing otherwise.

34.     "**Disputed Claims Reserve**" means an appropriate reserve in an amount to be determined by the Reorganized Debtor for Distribution on account of Disputed Claims that are subsequently Allowed after the Effective Date, in accordance with Article VII hereof.

35.     "**Distribution**" means the distribution of the Proceeds of the Sale.

36.     "**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article XI hereof are satisfied.

37.     "**Entity**" means an "entity" (as that term is defined in Section 101(15) of the Bankruptcy Code).

38.     "**Equity Interest**" means any ownership of any equity in the Debtor, including, as may be applicable, any stock or share.

39.     "**Estate**" means the estate of the Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

40.     "**Excess Proceeds**" means the balance of the Proceeds after payment of all Allowed Claims.

41.     "**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date, as such terms are used within Section 365 of the Bankruptcy Code.

42.     "**File**" or "**Filed**" means, with respect to any pleading, entered on the docket of the Bankruptcy Case and properly served in accordance with the Bankruptcy Rules.

43.     "**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

44.     "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired, and no appeal or petition for certiorari has been timely taken or motion for reargument or rehearing has been timely Filed, or as to which any appeal that has been taken or any petition for certiorari or motion for reargument or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

45.     "**General Unsecured Claims**" means any alleged Claim against the Debtor that is not secured by a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, but excluding any Administrative Expense Claim and Priority Claim.

46.     "**Governmental Unit**" means a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

47.     "**Impaired**" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

48.     "**Kaidi**" means Zhongxn Kaidi Electric Power Engineering Co., Ltd f/k/a China Kaidi Electric Power Engineering Co., Ltd., and/or its assignee.

49.     "**Order Approving Amended Bid Procedures Motion**" means the Order (A) Approving Bidding and Auction Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction, Sale Hearing, and other Dates and Deadlines, (C) Approving Cure Procedures for the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief dated January 30, 2020 and docketed at ECF No. 210.

50.     "**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

51.     "**Petition Date**" means March 29, 2019, the date on which an involuntary petition for relief was Filed against the Debtor initiating this Bankruptcy Case.

52.     "**Plan**" means this plan of reorganization Filed by the Debtor, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, which is incorporated herein by reference.

53.     "**Priority Claim**" means any Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or that is a General Unsecured Claim.

54.     "**Pro Rata**" means the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in such Class.

55.     "**Proceeds**" means the net proceeds available from the Sale.

56.     "**Professional**" means any Person employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

57.     "**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

58.     "**Record Date**" means the record date for determining the entitlement of holders of Claims to receive Distributions under the Plan on account of Allowed Claims. The Record Date shall be the date on which the Disclosure Statement Order is entered.

59.     "**Released Parties**" means each of: (a) the Debtor, (b) the UCC, (c), Harvest International New Energy Co., Ltd, and its affiliates, (d) Sunshine Kaidi New Energy Group Co., Ltd. and its affiliates, (e) Yilong Chen, and (f) with respect to each of the foregoing in clauses (a) through (e), its successors and assigns, direct and indirect equity holders, and attorneys.

60.     "**Releasing Parties**" means all holders of Claims and Equity Interests; ***provided, however***, that any holder of a Claim or Equity Interest that opts out of the releases in the Plan shall not be a "Releasing Party."

61.     "**Reorganized Debtor**" means the Debtor on and after the Effective Date.

62.     "**Representatives**" means, with regard to any Entity, its officers, directors, employees, advisors, managers, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals).

63.     "**Sale**" means the sale of the Debtor's Equity Interest to Kaidi for $2,100,000 in cash paid by Kaidi.

64.     "**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs Filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

65.     "**Substantial Consummation**" means the date of the first Distribution to Creditors.

66.     "**UCC**" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Case.

67.     "**Voting Deadline**" means the period established by the Bankruptcy Court within which ballots may be cast on the Plan.

## B.     Rules of Interpretation

1.     Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*. In construing this Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

2.     Notwithstanding anything herein to the contrary or otherwise, in the event there are any inconsistencies between the terms and conditions of: (a) any Disclosure Statement and this Plan, the terms and conditions of the Plan shall control,  or (b) the Plan and any order confirming this Plan, the order confirming the Plan shall control.

3.     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

4.     All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

7

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

1.     **Classification Generally**. All Claims and Equity Interests, except Administrative Expense Claims, are placed in Classes under the Plan. A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class. A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.     **Unclassified Claims**. Administrative Expense Claims are not classified under this Plan.

3.     **Classified Claims**. Claims and Equity Interests are classified under this Plan as follows:

Class 1:       Priority Claims

Class 2:       General Unsecured Claims

Class 3:       Equity Interests

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

1.     **Administrative Expense Claim Applications and Deadline**. Holders of Administrative Expense Claims, including Professional Claims, other than: (i) Allowed Administrative Expense Claims as of the Effective Date; (ii) Administrative Expense Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (iii) Administrative Expense Claims that constitute fees or charges assessed against the Estate under Chapter 11, Title 28, United States Code, must by no later than the Administrative Expense Claims Bar Date: (a) File an application with the Bankruptcy Court for allowance of the Administrative Expense Claim; and (b) serve a copy of such application on the Debtor, the United States Trustee, and all other parties otherwise entitled to notice thereof. Failure to File and serve such application by the Administrative Expense Claims Bar Date shall result in the Administrative Expense Claim being forever barred and discharged as against the Debtor and the Estate, and the property of any of the foregoing including property transferred pursuant to the Plan. Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Expense Claims (including Professional Claims) under the Bankruptcy Code.

2.     **Treatment of Allowed Administrative Expense Claims**. Except with respect to Administrative Tax Claims, and unless previously paid, and except to the extent that the holder of an Allowed Administrative Expense Claim agrees to different treatment, each holder of an Allowed Administrative Expense Claim, including a Professional Claim, shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Expense Claim, from the Proceeds of the Sale, the amount of such Allowed Administrative Expense Claim, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs

8

within ten (10) Business Days after the later of the (i) Effective Date, or (ii) date such Administrative Expense Claim becomes an Allowed Claim.

3. **Administrative Tax Claims**. Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by the Plan, and shall survive the Plan without need for any action on the part of the holder thereof. Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtor or the Estate free and clear of any lien securing an Administrative Tax Claim. Any and all rights to contest any Administrative Tax Claim, including as may be appropriate under Section 505 of the Bankruptcy Code, are preserved and transferred to Kaidi as of the Effective Date.

4. **Section 505**. For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtor and the Estate reserve all rights under Section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said Section 505 with respect thereto.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS

Except for Administrative Expense Claims, Professional Claims and Administrative Tax Claims, all Claims against and Equity Interests in the Debtor are placed in Classes.

The following table classifies Claims against, and Equity Interests in, the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority Claims | Unimpaired | Deemed to Accept |
| 2 | General Unsecured Claims | Impaired | Entitled to Vote |
| 3 | Equity Interests | Impaired | Deemed to Reject |

1. **Class 1: Priority Claims**

**Identification of Class**. Class 1 consists of Priority Claims against the Debtor.

**Treatment**. Priority Claims entitled to priority treatment pursuant to Section 507(a)(1), (a)(6), (a)(7), (a)(9), and (a)(10) of the Bankruptcy Code, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Priority Claim, the amount of such Allowed Priority Claim, in cash, and without interest, attorneys' fees, or costs, no later than ten (10) Business Days after becoming Allowed.

**Impairment**. Class 1 is not impaired under this Plan.

2.    **Class 2: General Unsecured Claims**

**Identification of Class**. Class 2 consists of General Unsecured Claims against the Debtor.

**Treatment**. In full satisfaction, release and discharge of, and in exchange for each General Unsecured Claim, each General Unsecured Claim, to the extent Allowed, shall receive Distributions in one or more tranches, with the first installment of not less than 75% of each Allowed General Unsecured Claim to be made on the Effective Date or as soon as practicable thereafter. The second installment, if necessary, will consist of the remainder of Proceeds up to the full amount of each Creditor's Allowed Claim and shall be made by the 180th day after the Effective Date or as soon as practicable thereafter, not to exceed one (1) year from the Effective Date.

**Impairment**. Class 2 is impaired under this Plan.

3.    **Class 3: Equity Interests**

**Identification of Class**. Class 3 consists of all Equity Interests in the Debtor.

**Treatment**. Existing Equity Interests will be cancelled on the Effective Date. The holders of Equity Interests will retain their economic interests to receive the Excess Proceeds after payment of all Allowed Claims, provided, however, that the holders of Equity Interests will not receive any Distribution under the Plan until the holders of all Allowed General Unsecured Claims have been paid in full.

**Impairment**. Class 3 is impaired under this Plan.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF PLAN

1.    **Impairment Controversies**. If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

2.    **Classes and Claims Entitled to Vote**. Class 2 is impaired is entitled to vote on the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

1.    **Overview**. The Plan provides for a sale of the Equity Interest of the Debtor to Kaidi and the payment to all Creditors with Allowed Claims from the Proceeds of the Sale. Equity Interest holders will retain their economic interests to receive the Excess Proceeds, provided, however, that holders of Equity Interests will not receive any Distribution under the Plan until the holders of Allowed General Unsecured Claims have been paid in full.

2.      **Sale of the Debtor's Equity Interest**. On January 30, 2020, the Bankruptcy Court entered the Order Approving Amended Bid Procedures. Both prior and subsequent to the entry of the Order Approving Amended Bid Procedures Motion, the Debtor engaged in discussions with multiple parties interested in purchasing some or all of the Debtor's assets, and several bidders submitted offers to purchase some or substantially all of the Debtor's Assets. On February 7, 2020, Kaidi delivered its Bid Term Sheet to the Debtor, outlining its offer. Kaidi was the highest and best bid received from any interested party. Through subsequent negotiations and pursuant to Kaidi's request, the proposed sale of the Debtor's Assets was restructured to be a Sale of the Debtor's Equity Interest in accordance with the terms of the Plan.

3.      **Distributions Under this Plan**. The assets available for Distribution under the Plan are comprised of the Proceeds.

4.      **Distribution of the Assets Under this Plan**. The Debtor proposes payment in cash to holders of Allowed Administrative Expense Claims and Allowed Priority Claims. The Debtor further proposes payment in cash in one or more tranches to holders of Allowed General Unsecured Claims, with the first installment of not less than 75% of each Allowed General Unsecured Claim to be made on the Effective Date or as soon as practicable thereafter, and the second installment, if any, will consist of the remainder of Proceeds up to the full amount of each Creditor's Allowed Claim, to be paid by the 180th day after the Effective Date or as soon as practicable thereafter, not to exceed one (1) year from the Effective Date. Finally, the holders of Equity Interests will receive the Excess Proceeds, provided, however, that they will not receive any Distribution under the Plan until holders of Allowed General Unsecured Claims have been paid in full.

In addition, on the Effective Date, the Debtor will issue new Equity Interests to Kaidi.

5.      **Corporate Existence**. Except as otherwise provided in the Plan, the Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, with all the powers of a corporation pursuant to the applicable law in the jurisdiction in which it is incorporated or formed and pursuant to the respective bylaws or other formation documents in effect prior to the Effective Date, except to the extent such formation documents are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable law).

6.      **Vesting of Assets Free and Clear**. On the Effective Date, and without need for further order, document, or action, all assets of the Estate shall vest in the Reorganized Debtor free and clear of all liens, claims, interests, and encumbrances, except any lien, claim, interest or encumbrance expressly and specifically provided for, preserved, or created in this Plan. For the avoidance of doubt, any assets vesting in the Debtor shall be subject to the obligations undertaken pursuant to this Plan so long as such are owned by the Reorganized Debtor.

7.      **No Assumption of Liabilities**. The Assumed Liabilities are those debts, liabilities, and obligations of the Debtor and the Estate, at any time prior to the Effective Date, that the Reorganized Debtor specifically and expressly assumes the obligation to pay under this Plan. The Reorganized Debtor does not assume, and shall not be liable for, any debt or liability of the Debtor or the Estate as of the Effective Date, except for: (i) the Assumed Liabilities, as modified in this Plan; and (ii) any other obligations of the Debtor under the Plan.

8.     **New Organizational Documents**. On or prior to the Effective Date or as soon thereafter as is practicable, the Reorganized Debtor shall, if so required under applicable state law, file its new organizational documents with the applicable Secretaries of State and/or other applicable authorities in its state of incorporation in accordance with the corporate laws of the state of incorporation.

9.     **Directors and Officers of Reorganized Debtor**. As of the Effective Date, the term of the current sole director of the Debtor shall expire, and Kaidi shall appoint a new director or board of directors in accordance with the respective corporate governing documents.

10.     **Operations of the Debtor Between the Confirmation Date and the Effective Date**. The Debtor shall continue to operate as Debtor-in-Possession during the period from the Confirmation Date through and until the Effective Date.

11.     **Terms of Injunction or Stays**. Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to Sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Case is closed.

## ARTICLE VII
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

1.     **Objection Deadline**. Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be Filed by the Claims Objection Deadline or be forever barred and waived. Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim. Provided that a claim objection is Filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate. Unless arising from an Avoidance Action, any proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date. Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late Filed Claim than such Creditor has.

2.     **Creditor Response to Objection**. With respect to any objection to a Claim when such objection is Filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must File with the Bankruptcy Court and serve a response to the objection upon the Debtor and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection. Failure to File and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to Creditor of the same.

3.     **No Waiver of Right to Object**. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Debtor's or other appropriate party-in-interest's right to object to any Claim.

12

A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

4.    **Allowance of Disputed Claims**. All Disputed Claims shall be liquidated and determined as follows:

(a)    Application of Adversary Proceeding Rules. Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Bankruptcy Rule 9014. However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings. The Debtor may, at its election, make and pursue any objection to a Claim in the form of an adversary proceeding.

(b)    Offsets. The Debtor shall retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan.

5.    **Amendments to Claims; Claims Filed After the Confirmation Date**. Except as otherwise provided in this Plan, and subject to the Bar Date, a Claim may not be Filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in this Plan, any new or amended Claim Filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

6.    **No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not distribute any cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim. Nothing herein shall preclude the Reorganized Debtor from making Distributions on account of the undisputed portions of Disputed Claims.

7.    **Disputed Claim Reserve**. On or after the Effective Date, the Reorganized Debtor shall be authorized, but not directed, to establish a Disputed Claims Reserve. After the Effective Date, the Reorganized Debtor may, in its sole discretion, hold any property to be Distributed pursuant to the Plan, in the same proportions and amounts as provided for in the Plan, in the Disputed Claims Reserve in trust for the benefit of the holders of Claims ultimately determined to be Allowed after the Effective Date. The Reorganized Debtor shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date solely to the extent of the amounts available in the Disputed Claims Reserve. Any amounts remaining in the Disputed Claims Reserve after satisfaction of all Allowed Disputed Claims shall constitute Proceeds and shall be Distributed in accordance with Article VII of this Plan without any further action or order of the Bankruptcy Court.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

1.      **Record Date for Distributions**. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3011 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making any Distribution with respect to any Claim, the Reorganized Debtor shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the Reorganized Debtor as of the Record Date.

2.      **Delivery of Distributions**. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Reorganized Debtor at (i) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (ii) the last known address of such holder if no proof of Claim is Filed or if the Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Reorganized Debtor may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Reorganized Debtor deems appropriate, but no Distribution to any such holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the Reorganized Debtor shall be returned to, and held in trust by, the Reorganized Debtor until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article VIII of this Plan. The Reorganized Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

3.      **Unclaimed Distributions**. Distributions that are not claimed by the expiration of the later of six (6) months from the Effective Date or ninety (90) days from such Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Reorganized Debtor, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of the applicable period, the Claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Reorganized Debtor to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Reorganized Debtor pursuant to Article VII of this Plan shall be distributed by the Reorganized Debtor to the other holders of Allowed Claims in accordance with the provisions of this Plan.

4.      **Transactions on Business Days**. If the Effective Date or any other date on which a transaction is to occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

14

5.     **Time Bar to Cash Payment by Check**. Checks issued by the Reorganized Debtor on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to Article VII of this Plan shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Reorganized Debtor as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article VIII of this Plan.

6.     **Compliance with Tax Requirements**. In connection with making Distributions under the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. No Distribution shall be made to or on behalf of a holder of an Allowed Claim pursuant to the Plan unless and until such holder has provided the Reorganized Debtor with any information that applicable law requires the Reorganized Debtor to obtain in connection with making Distributions, including completed IRS Form W9. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six (6) months from the date of first notification to the holder of the need for such information or for the cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article VIII of the Plan.

7.     **No Payments of Fractional Dollars**. Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

8.     **Interest on Claims**. Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

9.     **Setoff and Recoupment**. The Reorganized Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect therefor, any claims or defenses of any nature whatsoever that the Debtor, its Estate or the Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, its Estate or the Reorganized Debtor of any right of setoff or recoupment that any of them may have against the holder of any Claim.

10.    **Default**.  In the event of a default under the Plan by the Reorganized Debtor, the creditor asserting a default shall send written notice of such default by email and first class mail to

the Reorganized Debtor and counsel with a ten (10) day period in which to cure such default.  If the Reorganized Debtor fails to cure such default, the creditor asserting a default shall be entitled to exercise all rights under State and Federal Law, including but not limited to commencing an action in Bankruptcy Court to enforce the terms of the Plan.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1.   **Assumption of Executory Contracts**. On the Effective Date, except as otherwise ordered by the Bankruptcy Court and unless previously rejected or subject to a pending motion to reject, all Executory Contracts of the Debtor shall be deemed assumed in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, and assumptions and assignments, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. For the avoidance of doubt, on the Effective Date, **all** intellectual property, including but not limited to the Debtor's license agreements and all acquired and pending patents, shall be deemed assumed.

## ARTICLE X
## EFFECTS OF PLAN CONFIRMATION

1.   **Discharge**. On the Effective Date, and automatically, without need for further document, order, or action, the Debtor is and shall be discharged of all Claims arising prior to the Effective Date pursuant to the provisions of Section 1141(d) of the Bankruptcy Code.

2.   **Plan Injunction**. Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or the Estate or any of their property, or against the Reorganized Debtor or any of its property, on account of a Claim or Debt that is discharged under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor or the Estate or their property, or against the Reorganized Debtor or any of its property, on account of a Claim or Debt that is discharged under this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtor or the Estate or their property, or against the Reorganized Debtor or any of its property, on account of a Claim or Debt that is discharged under this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtor or its property, or against the Reorganized Debtor or any of its property, with respect to any property to be distributed or transferred under the Plan, or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction ((i) through (iv)) shall not preclude any Person from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, or from appealing the Confirmation Order, or from defending against any action asserted against it by the Debtor (so long as such defense does not include anything more than a setoff and netting of any Claim otherwise discharged in this Plan, and so long as such defense in no way includes any actual recovery by such Person except as any such recovery is expressly provided for in this Plan).

3.     **No Liability for Solicitation or Participation**. Pursuant to Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

### ARTICLE XI
### CONDITIONS PRECEDENT

1.     **Conditions Precedent to Confirmation and Effectiveness of Plan**. The Effective Date shall not occur unless all of the following conditions precedent have been satisfied or are waived: (i) the Bankruptcy Court has entered the Confirmation Order; (ii) such Confirmation Order is a Final Order; (iii) the Debtor has made an initial Distribution to Allowed General Claims (Class 2); (iv) all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and shall have become binding on all parties thereto; and (v) a notice of the Effective Date shall have been Filed by the Reorganized Debtor in the Bankruptcy Case.

2.     **Non-Occurrence of the Effective Date**. If the Plan is confirmed but the Effective Date does not occur by March 30, 2021, unless such date is extended with permission of the UCC or by Court order: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtor and other parties in interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

3.     **Notice of the Effective Date**. On or before three (3) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Expense Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

### ARTICLE XII
### RELEASE, INJUNCTIVE AND RELATED PROVISIONS

1.     **Compromise and Settlement. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtor, its Estate and holders of Claims and Equity Interests.**

2.     **Releases by the Debtor. Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each**

17

of the Released Parties, including, without limitation: (i) the satisfaction and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise; and (ii) the services of the Debtor's officers and/or directors, consultants, and the Professionals retained in this Bankruptcy Case in facilitating the expeditious implementation of the Sale of substantially all of the Debtor's assets, the Debtor hereby provides a full release, waiver, and discharge to the Released Parties (and each Released Party shall be deemed released and discharged by the Debtor) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, that are based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtor, including, without limitation, those that the Debtor or Reorganized Debtor would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Bankruptcy Case or the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Article XII of the Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (i) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable and reasonable; (iv) approved after due notice and opportunity for hearing; and (v) a bar to the Debtor or the Reorganized Debtor.

3.   **Exculpation**. On the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, Causes of Action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor, the Estate, any Creditor, or any Person may have or be able to assert against: (i) the Debtor, its shareholders and affiliates, and their respective Representatives so long as such claims arise out of the ordinary course of duties; (ii) Akerman LLP and its Representatives, (iii) the UCC so long as such claims arise out of the ordinary course of duties, and (iv) Kutner Brinen, P.C., and its Representatives, solely for any actions or inactions taken by the foregoing in, or arising against the following as a result of, the Bankruptcy Case, the Disclosure Statement, and the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; provided, however, that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Expense Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released; provided further, however, that nothing in this Plan releases any claim against any of the foregoing for gross negligence, fraud, fraudulent transfers, misappropriation, breach of fiduciary duty, receipt of any unauthorized monies, or intentional act; provided further that nothing in this Plan releases any claim against the foregoing that arises prior to the Bankruptcy Case or after the Effective Date of the Plan.

4. **Third Party Releases**. Except as otherwise expressly provided for in this Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Releasing Parties shall be deemed to have forever released, waived and discharged all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, that are based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtor, the Bankruptcy Case or the Plan against the Debtor and Released Parties, *provided, however*, that any holder of a Claim or Equity Interest that opts out of the releases on the ballot shall not be a "Releasing Party."

5. **Injunction**. Upon confirmation of the Plan and the occurrence of the Effective Date, Claimants may not seek payment or recourse against or otherwise be entitled to any Distribution except as expressly provided in the Plan.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from:

(a)   commencing or continuing in any manner any action or other proceeding of any kind against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;

(b)   enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;

(c)   creating, perfecting or enforcing any encumbrance of any kind against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;

(d)   asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor's Estate, the Reorganized Debtor, or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely Filed proof of Claim; or

(e)   commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, its Estate, their successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

6. **Releases of Liens**. Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective

Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estate shall be fully released and discharged and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor and the Reorganized Debtor.

## ARTICLE XIII
## RETENTION OF JURISDICTION AND CLAIMS

1.     **Jurisdiction of Bankruptcy Court**. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

(a)     hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

(b)     hear and determine objections (whether Filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

(c)     ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(d)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)     construe and to take any action to enforce this Plan and the Confirmation Order;

(f)     issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

(g)     hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(h)     hear and determine all applications for Administrative Expense Claims;

(i)     hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

(j)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)     hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(l)       hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Debtor finds it necessary or appropriate to seek an order authorizing the same;

(m)      enter the Final Decree upon proper request;

(n)      command and enjoin any Creditor or Person to comply with the transfer and vesting of assets of the Debtor and the Estate free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan; and

(o)      hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and Causes of Action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor or the Estate, including, without limitation, matters concerning federal, state, local and other taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

2.      **Failure of Bankruptcy Court to Exercise Jurisdiction**. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth in this Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

3.      **No Creation of Jurisdiction**. This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists. For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, or withdrawal of the reference, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

4.      **Retention and Preservation of General Rights**. Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, any and all rights, property, and interests, regardless of whether they are scheduled, Filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other Person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other Person; (v) rights to any tax refund; and (vi) claims and Causes of Action against any Creditor or Person whatsoever, including for affirmative relief and to reduce any liability, are retained by the Debtor and the Estate and shall vest in the Reorganized Debtor.

5.      **Retention and Preservation of Specific Rights**. Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the following claims and Causes of Action, which shall in no way be extinguished, released, or prejudiced as a result of the

21

confirmation of this Plan are specifically reserved and retained by the Debtor and the Estate and shall vest in the Reorganized Debtor:

    (i)      Avoidance Actions;

    (ii)     Accounts Receivable;

    (iii)    claims, Causes of Action, lawsuits, and litigation commenced by the Debtor at any time prior to the Confirmation Hearing, whether in the Bankruptcy Court or otherwise; and

    (iv)    all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to Section 505 of the Bankruptcy Code.

### ARTICLE XIV
### MISCELLANEOUS PROVISIONS

    1.    **Payment of Statutory Fees**. All fees payable pursuant to Section 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Bankruptcy Case on the earlier of when due or the Effective Date, or as soon thereafter as practicable by the Reorganized Debtor.

    2.    **Modification of this Plan**. Subject to the limitations contained in the Plan: (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

    3.    **Revocation or Withdrawal of this Plan**. The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

    4.    **Substantial Consummation of Plan**. The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

    5.    **Exercise of Liens**. Any lien preserved in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict

53950471;2

conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

6.      **Rights to Payment and Pro Rata Distributions**. For the avoidance of doubt, and withstanding anything herein to the contrary, no interest shall be paid unless expressly provided for in the Plan and all interests will be paid equally within their respective classification on a Pro Rata basis.

7.      **Successors and Assigns**. The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.      **Binding Effect**. The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest in the Bankruptcy Case.

9.      **Confirmation Order Controls**. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Plan and the Confirmation Order, the terms and provisions of the Confirmation Order shall control.

10.     **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado, without giving effect to the principles of conflict of laws thereof.

11.     **Severability**. Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtor may, in its discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

12.     **Automatic Stay** . The automatic stay provided by Section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

13.     **Reservation of Rights**. Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the conditions to effectiveness of this Plan shall have been waived or satisfied. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Person or Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (ii) any holder of a Claim or other party-in-interest prior to the Effective Date.

14.     **Section 1146 Exemption**. Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent contemplated by Section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.     **Section 1125(e) Good Faith Compliance**. The Debtor and its Representatives shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

16.     **Further Assurances**. The Debtor, the Reorganized Debtor, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

17.     **Service of Documents**. Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor and/or the Reorganized Debtor, as applicable, shall be sent by first class U.S. mail, postage prepaid as follows:

SkyFuel, Inc.
c/o Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Attn: David Parham

with a copy to:

Akerman LLP
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
Attn: Amy Leitch

18.     **Notices and Distributions**. On and after the Effective Date, all notices, requests and Distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Expense Claim Filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor. Any holder of a Claim may designate another address for the purposes of this section by providing the Debtor written notice of such address, which notice will be effective upon receipt by the Debtor as otherwise appropriate.

19.     **Filing of Additional Documents**. On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

24

20.     **Incorporation of Exhibits**. Any exhibits to this Plan, or any supplements to this Plan Filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

21.     **No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability of any Person on any Claim or the propriety of any classification of any Claim.

22.     **No Stay of Confirmation Order**. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

23.     **Aid and Recognition**. The Debtor or Reorganized Debtor, as the case may be, shall, as needed to effect the terms of the Plan, request the aid and recognition of any court or judicial, regulatory or administrative body in any province or territory of China or any other nation or state.

## ARTICLE XV
## CONFIRMATION REQUEST

The Debtor hereby requests confirmation of this Plan pursuant to Section 1129(a) of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of Claims entitled to vote, Section 1129(b) of the Bankruptcy Code.

53950471;2