IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>SkyFuel, Inc.,<br><br>           Debtor. | Chapter 11<br><br>Case No. 19-12400 (JGR) |

**UNITED STATES' OBJECTION TO CONFIRMATION OF
THE PLAN OF REORGANIZATION FOR SKYFUEL, INC.**

The United States files this objection to the confirmation of the Plan of Reorganization for SkyFuel, Inc. (ECF No. 308) (the "Plan") pursuant to 11 U.S.C. § 1129, and in support of its objection, respectfully states as follows:

### INTRODUCTION

The proposed plan of reorganization for debtor SkyFuel, Inc. ("SkyFuel") contains a number of problems that prevent confirmation. The United States objects to confirmation because the Plan (i) improperly eliminates United States' setoff and recoupment rights, (iii) contains overbroad exculpation and third-party release provisions, and (iii) purports to allow the assumption and assignment of an agreement with the U.S. Department of Energy ("DOE") without first obtaining DOE's authorization to do so. Unless the Debtor resolves these problems before the confirmation hearing, the United States requests that the Court deny confirmation of the Plan.[1]

### BACKGROUND

**I.  Factual Background**

    1.    SkyFuel is a solar thermal power technology and equipment manufacturer. On

---

[1] SkyFuel's counsel provided the United States with an extension of the objection deadline to March 9, 2021. SkyFuel and the United States are continuing to negotiate language to be included in their proposed confirmation order; if SkyFuel and the United States reach agreement on this language, the United States will not object to the confirmation of the Plan.

1

October 1, 2018, SkyFuel and DOE's Office of Energy Efficiency and Renewable Energy ("EERE") entered an Assistance Agreement with Special Terms and Conditions ("Assistance Agreement") to develop technology to reduce the levelized cost of heat from solar-thermal energy (the "Project"). *See* Ex. 1 (Assistance Agreement).

2. With EERE's assistance and oversight, SkyFuel aimed to develop a novel, membrane-based, lightweight parabolic trough solar collector. In conjunction with the design of the collector, SkyFuel would design and integrate an associated heat transfer fluid delivery system and a low-temperature thermal energy storage system.

3. Under the terms of the Assistance Agreement, SkyFuel agreed to comply with federal law and "DOE Assistance Regulations," including but not limited to 2 C.F.R. part 200 as amended by 2 C.F.R. part 910. *See* Ex. 1, at 4. These regulations require SkyFuel to obtain DOE's authorization to continue the Project if SkyFuel planned to undergo any "change of control"— defined as "[a]ny event by which any individual or entity other than the recipient becomes the beneficial owner of more than 50% of the total voting power of the voting stock of the recipient," among other definitions. 2 C.F.R. § 910.368.

4. The Assistance Agreement contemplated the completion of the Project in two phases (referred to as "Budget Periods"), with EERE contributing approximately 80 percent of funding for each phase, and SkyFuel contributing the remaining 20 percent. *See* Ex. 1, at Term 27. Specifically:

| Budget Period | EERE Cost Share, including FFRDC[2] Costs | | Recipient Cost Share $ / % | Total Estimated Costs |
|---|---|---|---|---|
| | EERE $ / % | FFRDC $ / % | | |
| 1 | $818,918 / 73.5% | $72,692 / 6.5% | $222,903 / 20% | $1,114,513 |
| 2 | $650,066 / 73.5% | $57,081 / 6.5% | $176,787 / 20% | $883,934 |
| Total Project | $1,468,984 / 73.5% | $129,773  6.5% | $399,690 / 20% | $1,998,447 |

5. The first Budget Period started on October 1, 2018 and was scheduled to end on September 30, 2019. Ex. 1, at 2. The second Budget Period was supposed to begin October 1, 2019 and last until September 30, 2020. *Id.* At the end of the first Budget Period, EERE was entitled to "redirect or discontinue funding the Project based on the outcome of EERE's evaluation of the Project at the Go/No Go decision point." *Id.* at Term 6.

6. SkyFuel did not reach the second Budget Period. In the middle of the first Budget Period, EERE began having concerns about SkyFuel's progress. It requested that SkyFuel submit a "Corrective Action Plan" to address those concerns. SkyFuel has yet to submit a sufficient Corrective Action Plan, or otherwise perform under the Assistance Agreement.

II. **SkyFuel's Bankruptcy and Plan of Reorganization**

7. On March 29, 2019, various creditors and two former SkyFuel employees filed an involuntary petition against SkyFuel under chapter 11 of the Bankruptcy Code. ECF No. 1. SkyFuel did not file a response to the petition, and the Court entered the order for relief on April 23, 2019. ECF No. 8. SkyFuel filed a Schedule G, Executory Contracts and Unexpired Leases, on July 12, 2019. ECF No. 53. Skyfuel listed the Assistance Agreement on this schedule. *Id.*

8. At the end of 2019, SkyFuel filed a motion to sell substantially all its assets to a

---

[2] FFRDC stands for Federally Funded Research Development Centers, which are operated by universities and corporations to fulfill certain long-term needs of the government which cannot be met as effectively by existing government or contractor resources.

3

winning bidder, and to assume and assign "Designated Contracts" to the winning bidder. *See* ECF No. 187. The motion did not define "Designated Contracts," nor did it identify any potential bidders. On February 27, 2020, the Court ordered the motion to be held in abeyance. *See* ECF No. 225.

9. On January 29, 2021, SkyFuel ultimately filed a Plan of Reorganization and Disclosure Statement. ECF Nos. 308-309. Under the terms of the Plan, "Zhongxn Kaidi Electric Power Engineering Co., Ltd f/k/a China Kaidi Electric Power Engineering Co., Ltd., and/or its assignee" (defined in the Plan as "Kaidi") would purchase 100 percent of the equity interests of SkyFuel ("Equity Sale"). *See* ECF No. 308, at 5, 10. Creditors with "Allowed Claims" would receive payment from the proceeds of the Equity Sale. *Id.*

10. The Plan further provides that all executory contracts, if not previously rejected or subject to a motion to reject, would be assumed "in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code," and that the entry of the Confirmation Order "shall constitute approval of such assumptions, and assumptions and assignments, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code." *Id.* at 20, Article IX.

11. At the time SkyFuel filed for bankruptcy, EERE had contributed approximately $350,000 towards the Project, and SkyFuel has contributed approximately $95,000 towards the Project. SkyFuel has not informed DOE (or EERE) about its intentions with respect to the Assistance Agreement, nor has SkyFuel sought authorization to continue the Project under new ownership.

## **OBJECTION**

12. Prior to confirming the Plan, "the Bankruptcy Court has an independent duty to ensure compliance with all confirmation standards [under section 1129 of the Bankruptcy Code]."

*In re Autterson*, 547 B.R. 372, 389 (Bankr. D. Colo. 2016).  Under section 1129(a)(1), "[t]he court shall confirm a plan only if . . [t]he plan complies with the applicable provisions of this title" and "has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. §§ 1129(a)(1), (a)(3).

13. The Plan does not meet the requirements of these sections because the Plan (i) improperly seeks to eliminate the United States' setoff and recoupment rights; (ii) contains overbroad exculpation and third-party release provisions; and (iii) purports to allow the assumption and assignment of the Assistance Agreement without complying with section 365 of the Bankruptcy Code and applicable non-bankruptcy law.

**I. The Plan Improperly Seeks To Eliminate The United States' Setoff and Recoupment Rights.**

14. The Plan should not be confirmed because it seeks to discharge the United States' setoff and recoupment rights.  The Plan provides:

> On the Effective Date, and without the need for further action, **the Plan and Confirmation Order shall constitute a release and discharge of all actions, Causes of Action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever**, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor, the Estate, any Creditor, or any Person may have or be able to assert against: (i) the Debtor, its shareholders and affiliates, and their respective Representatives so long as such claims arise out of the ordinary course of duties; (ii) Akerman LLP and its Representatives, (iii) the UCC so long as such claims arise out of the ordinary course of duties, and (iv) Kutner Brinen, P.C., and its Representatives, solely for any actions or inactions taken by the foregoing in, or arising against the following as a result of, the Bankruptcy Case, the Disclosure Statement, and the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan. . . .

ECF No. 308, at 18, Article XII.3, (emphasis added).  The Plan defines "Causes of Action" broadly

to include "rights of set-off" and "counterclaims and crossclaims." *Id.* at 7, Article I.19. The Plan further provides:

> Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, **all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from: . . . (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor's Estate, the Reorganized Debtor, or their successors and assigns, or against any of their assets and properties**, except to the extent a right to setoff or subrogation is asserted with respect to a timely Filed proof of Claim
> . . . .

*Id.* at 23, Article XII.5. Thus, the United States' rights of setoff and recoupment (to the extent recoupment is captured by the broad definition of "Causes of Action") are purportedly discharged on the Effective Date.

15. The Tenth Circuit has held that a discharge in bankruptcy does not bar a creditor from asserting its right to setoff. *In re Davidovich*, 901 F.2d 1533, 1539 (10th Cir. 1990).[3] To the contrary, "the right to assert a setoff against a mutual, prepetition debt owed the bankrupt estate survives even the Bankruptcy Court's discharge of the bankrupt's debt." *Id.*; *United States v. Myers (In re Myers)*, 362 F.3d 667, 672 (10th Cir. 2004) (holding that section 553 of the Bankruptcy Code "preserves setoff rights that might otherwise exist under federal or state law").

16. A creditor with an independent right to setoff establishes a right to setoff under section 553 by satisfying three elements:

(1) "First, the creditor must owe a debt to the debtor that 'arose before the commencement of' the bankruptcy proceedings";

---

[3] *See also I.R.S. v. Luongo (Matter of Luongo)*, 259 F.3d 323, 333 (5th Cir. 2001) (holding that a discharge in bankruptcy "does not bar a creditor from asserting its right to setoff"); *U.S. v. Munson*, 248 B.R. 343, 345 (C.D. Ill. 2000) (discussing circuit split but concluding that setoff rights survived discharge); *In re Bare*, 284 B.R. 870, 873-74 (Bankr. N.D. Ill. 2002) (adopting *Munson*); *In re Ronnie Dowdy, Inc.*, 314 B.R. 182, 188 (Bankr. E.D. Ark. 2004) (concluding that setoff rights survived discharge).

(2) "Second, the creditor must have a claim against the debtor that 'arose before the commencement of' the bankruptcy proceedings"; and

(3) "Third, the creditor's and debtor's obligations must be mutual."

*Myers*, 362 F.3d at 672 (quoting 11 U.S.C. § 553) (citing cases).

17. Importantly, none of these three elements require a party to assert the setoff rights in a bankruptcy case. *See In re Davidovich*, 901 F.2d at 1539 (holding that (i) "filing of a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553" and (ii) "a discharged debt may be setoff upon compliance with the terms and conditions stated in section 553 of the Code").[4]

18. Similarly, recoupment is unaffected by a discharge in bankruptcy. *Beaumont v. Dep't of Veteran Affairs* (*In re Beaumont*), 586 F.3d 776 (10th Cir. 2009); *City of Fort Collins v. Gonzales (In re Gonzales)*, 298 B.R. 771, 773 (Bankr. D. Colo. 2003) ("Where a party has a valid right of recoupment, that right is unaffected by the debtor's discharge."); *see also Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035 (3d Cir. 1995) (holding that recoupment survives discharge following confirmation and implementation of chapter 11 plan even if creditor did not object to plan or seek a stay pending appeal); *Saif Corp. v. Harmon* (*In re Harmon*), 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) ("Because recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge.").

19. SkyFuel must comply with the terms of its Assistance Agreement and the federal law incorporated thereunder, including payment of all amounts due for each Budget Period to the

---

[4] To the extent relevant, equitable considerations should also permit the United States to preserve its setoff rights, as SkyFuel has provided DOE with little to no information with respect to its performance under the Assistance Agreement, essentially limiting DOE's ability to evaluate the Project's progress (if any) and any outstanding amounts owed.

7

extent DOE determines such amounts are owed. Because the Debtor submitted no Corrective Action Plan and failed to continue performing under the Assistance Agreement, all of which is necessary for DOE to determine whether any amounts may be owed under the Assistance Agreement, the United States is concerned that it may later discover the existence of a prepetition claim about which it was not aware during the pendency of this case. If this occurs, the United States will be unable to file a timely proof of claim or otherwise assert the claim in this bankruptcy case.

20. The United States therefore objects to confirmation of the Plan because Tenth Circuit authority is clear that the setoff and recoupment rights for undetermined prepetition claims must be preserved.

## II. The Plan Contains Improper and Overbroad Exculpation and Release Provisions.

21. Section 524(e) provides that the discharge of a debt "does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Plan's exculpation and third-party releases violate section 524(e).

22. Exculpation and third-party releases must be "limited to acts taken solely in connection with the Chapter 11 case" during the post-petition period. *In re Midway Gold US, Inc.*, 575 B.R. 475, 511 (Bankr. D. Colo. 2017); *see also In re Vitro SAB De CV*, 701 F.3d 1031, 1059 (5th Cir. 2012) ("[A] non-consensual, non-debtor release through a bankruptcy proceeding, is generally not available under United States law."); *In re Fraser's Boiler Service, Inc.*, 593 B.R. 636, 640 (Bankr. W.D. Wash. 2018) (exculpation only for "limited post-petition acts and omissions related to this bankruptcy case").

23. The "Exculpation" provision in Article XII.3 is not limited to acts or omissions related to the bankruptcy case. Rather, the Plan releases and discharges "all actions, Causes of

Action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever" that "any Creditor" or "any Person" may have or be able to assert against SkyFuel, any of its affiliates or "Representatives," and other third parties "as long as such claims arise out of the ordinary course of duties" during the course of the bankruptcy with exceptions for gross negligence, fraud, and intentional acts. ECF No. 308, at 18, Article XII.3. The definition of "Person" includes "governments, agencies or political subdivisions thereof," and the definition of "Representative" includes the representatives of "any Entity." *Id.* at 10-11, Article I.50 and Article I.62.

24. The "Third Party Releases" in Article XII.4 are equally problematic. That section provides that "all Releasing Parties shall be deemed to have forever released, waived and discharged all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever"—including "violations of federal or state securities laws"—against the "Debtor and Released Parties" if such claims and liabilities are "in any way related to the Debtor, the Bankruptcy Case, or the Plan. *Id.* at 23, Article XII.4. "Releasing Party" is defined as any "holder of a Claim," and "Claim" is defined under section 101(5) of the Bankruptcy Code.[5]

25. These provisions, incorporating these overbroad definitions, could prohibit the United States from asserting any claim or demand against innumerable and/or unnamed non-debtors (e.g., breach of contract, setoff and recoupment rights, or police and regulatory liability) – even if these parties committed illegal acts wholly unrelated to the bankruptcy. Such prohibition is not permitted under the Bankruptcy Code, and these provisions must be removed prior to Confirmation.

---

[5] The Plan allows holders of Claims to "opt-out" of the Third Party Releases; however, the United States received a ballot for general unsecured creditors and those voting for or against the Plan. The United States is not a general unsecured creditor and does not intend to vote for or against the Plan, so this "opt-out" process was arguably inapplicable to the United States.

9

### III. The Plan Improperly Allows the Assumption and Assignment of the Assistance Agreement without DOE's Authorization.

26. The Plan indicates that SkyFuel intends to assume any executory contract that it did not previously assume or reject under section 365 of the Bankruptcy Code, and that the entry of the Confirmation Order "shall constitute approval of such assumptions, and assumptions and assignments, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code." ECF No. 308, at 20, Article IX.

27. This language suggests that upon entry of the Confirmation Order, SkyFuel – under completely new ownership – will be permitted to assume and assign the Assistance Agreement without first obtaining DOE's consent. That should not be permitted under the Plan for two reasons.

28. First, section 365(b) of the Bankruptcy Code bars SkyFuel from assuming the Assistance Agreement unless SkyFuel: (a) cures all existing defaults or provides adequate assurance of a prompt cure; (b) compensates the non-debtor party for actual pecuniary losses or provides adequate assurance that such compensation will be promptly made; and (c) provides adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1)(A)-(C).

29. Notwithstanding the boilerplate language in the Plan, *see* ECF No. 308, Article IX, SkyFuel has not provided any indication that it intends to assume the Assistance Agreement, nor has it provided any "adequate assurance of future performance" under that agreement, such as its assurance that it will comply with "DOE Assistance Regulations," including but not limited to 2 C.F.R. part 200 as amended by 2 C.F.R. part 910. *See* Exhibit 1, at 4 (Special Terms and Conditions).

30. These regulations require, *inter alia*, SkyFuel to obtain DOE's authorization for

any change of control if SkyFuel wishes to continue with the Project. 2 CFR § 910.368. SkyFuel has yet to do this, and its assumption of the Assistance Agreement under the Plan should be denied. *See In re Tabernash Meadows, Ltd. Liab. Co.*, 2005 Bankr. LEXIS 210, at *25 (Bankr. D. Colo. Feb. 15, 2005) ("[I]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens. An executory contract cannot be assumed in part and rejected in part.") (citing cases) (internal quotation marks omitted); *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 38 (Bankr. D. Colo. 1999) ("In a bankruptcy context, if the District does not assume both the benefits and burdens of an executory contract, it cannot assume it. If a contract is not expressly assumed, it is rejected.").

31. Second, under section 365(c)(1)(A), SkyFuel "may not assume or assign any executory contract or unexpired lease . . . if applicable law excuses such a party, other than the debtor, to such a contract or lease from accepting performance from or rendering performance to any entity other than the debtor or the debtor in possession." 11 U.S.C. § 365(c)(1)(A). The goal of section 365(c)(1) is to "protect non-debtor third parties whose rights may be prejudiced by having a contract performed by an entity other than the one with which it originally contracted, but the exception is limited to cases where non-bankruptcy law so states." *C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 422 B.R. 746, 761 (B.A.P. 10th Cir. 2010) (internal quotation marks omitted).

32. Here, at least two applicable laws – including the regulation cited above – prohibit the assumption and assignment of the Assistance Agreement without DOE's consent. *See* 2 CFR § 910.368(d) (incorporated into the terms of the Assistance Agreement: "The contracting officer must authorize a change of control for the purposes of the award. Failure to receive the contracting officer's authorization for a change of control may lead to a suspension of the award, termination

for failure to comply with the terms and conditions of the award, or imposition of special award conditions pursuant to 2 CFR 910.372."); 41 U.S.C. § 15 (" No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned.").

33. For these reasons, the United States does not consent to the assumption, or the assumption and assignment, of the Assistance Agreement without compliance with section 365 of the Bankruptcy Code and applicable federal law, as incorporated into the terms of the Agreement.

## CONCLUSION

For the foregoing reasons, the United States asks the Court to deny confirmation of the Plan.

DATED: March 9, 2021

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General

MATTHEW T. KIRSCH
Acting United States Attorney
District of Colorado

*/s/ Tiffiney F. Carney*
RUTH A. HARVEY
MARGARET M. NEWELL
TIFFINEY F. CARNEY, Trial Attorney
Civil Division
U. S. Department of Justice
1100 L Street NW, Room 7008
P. O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
T (202) 353-7971

*Attorneys for The United States of America*

**CERTIFICATE OF SERVICE**

On March 9, 2021, I submitted the foregoing document using the electronic case filing system of the Court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Tiffiney F. Carney*
Tiffiney F. Carney
Trial Attorney
