# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

In re:                                    )
                                          )
SKYFUEL, INC.,                            )        Case No. 19-12400-JGR
                                          )        Chapter 11
             Debtor.                      )

## ORDER APPROVING DISCLOSURE STATEMENT AND
## CONFIRMING PLAN OF REORGANIZATION FOR SKYFUEL, INC.

THIS CASE came before the Court on March 10, 2021 upon the *PLAN OF REORGANIZATION FOR SKYFUEL, INC. [Doc. 308]* (the "Plan"),[1] *DISCLOSURE STATEMENT, PURSUANT TO 11 U.S.C. § 1125, FOR PLAN OF REORGANIZATION FOR SKYFUEL, INC. [Doc. 309]*, and *ORDER (A) APPROVING AN INTERIM BASIS DISCLOSURE STATEMENT, (B) APPROVING PROCEDURES FOR SOLICITATION OF VOTES ON PLAN OF REORGANIZATION, AND (C) SCHEDULING HEARING FOR CONFIRMATION OF PLAN OF REORGANIZATION [Doc. 319]*:

After considering amendments announced in open court and memorialized herein along with (a) the *DECLARATION OF GREG MARTY IN SUPPORT OF CONFIRMATION [Doc. 356]*; (b) the *AMENDED REPORT REGARDING (I) SOLICITATION OF VOTES AND (II) TABULATION OF BALLOTS CAST ON PLAN OF REORGANIZATION FOR SKYFUEL, INC. [Doc. 354] ("Ballot Summary")*; (c) the evidence proffered on record; and (d) the entire record in this Chapter 11 case, and for reasons stated orally and recorded in open court that shall constitute the decision of the Court, the Court has concluded the following:

**IT IS HEREBY ORDERED:**

1.    Jurisdiction, Venue, Core Proceedings. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto. The Debtor is an eligible debtor under 11 U.S.C. § 109. Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is the plan proponents in accordance with 11 U.S.C. § 1121(a).

2.    Confirmation of Plan. The Disclosure Statement, attached hereto as **Exhibit 1**, is **APPROVED** and the Plan, attached to the Disclosure Statement as **Exhibit A** and as modified by the following amendments, is **CONFIRMED** pursuant to 11 U.S.C. § 1129:

   a.   Article XII(3)(i) of the Plan, which stated "**(i) the Debtor, its shareholders and affiliates, and their respective Representatives so long as such claims arise out of the ordinary course of duties;**" is hereby amended to state:

---

[1] Capitalized terms shall have the meaning ascribed to them in the Plan unless otherwise defined herein.

**(i) the Debtor, its officers and directors and retained professionals so long as such claims arise out of the ordinary course of duties**.

b.   Article XII(4) of the Plan is stricken its entirety.

c.   Notwithstanding any provision in the Plan or this Order:

> Nothing discharges, releases, precludes, or enjoins: (i) any liability to the United States that is not a Claim; (ii) any Claim of the United States arising on or after the Confirmation Date; or (iii) any liability to the United States on the part of any non-debtor; *provided*, that all legal or equitable rights or defenses of the Debtor, the Reorganized Debtor, or any non-debtor under applicable non-bankruptcy law with respect to any such claim, liability, or cause of action are expressly preserved.

> For the avoidance of doubt, the Debtor and Reorganized Debtor shall comply with all applicable non-bankruptcy law governing any contract, agreement, award, lease, covenant, guaranty, indemnification, or other interest of or with the United States (each a "Federal Interest" and together, "Federal Interests"), including but not limited to all statutes and regulations governing the terms of any award or agreement between the U.S. Department of Energy ("DOE") (including its components) and the Debtor or Reorganized Debtor.

> For the avoidance of doubt, any assumption, sale, assignment, or transfer of the Assistance Agreement, effective date October 1, 2018, between DOE's Office of Energy Efficiency and Renewable Energy and the Debtor, is subject to DOE regulations, including but not limited to 2 C.F.R. § 910.368, and applicable non-bankruptcy law.

> For the avoidance of doubt, nothing shall: (i) affect or impair the exercise of the United States' police and regulatory powers against the Debtor, the Reorganized Debtor, or any non-debtor; (ii) be interpreted to set cure amounts or to require the United States to novate or otherwise consent to the assignment or transfer of any Federal Interest; or (iii) affect or impair the United States' rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtor or the Reorganized Debtor and such rights and defenses are expressly preserved; *provided* that all rights and defenses of the Debtor and Reorganized Debtor under applicable non-bankruptcy laws, regulations, and rules concerning the United States' setoff or recoupment rights are expressly reserved and preserved.

d.   Alliance for Sustainable Energy, LLC, Managing and Operating Contractor for the National Renewable Energy Laboratory ("Alliance") withdraws its objections to the Plan and consents to the Debtor and/or Reorganized Debtor's assumption of the intellectual property license ("License") Alliance granted the Debtor in April 2002

and the contract known as a Cooperative Research and Development Agreement ("CRADA" and together with the License, the "NREL Contracts") entered into with the Debtor in November 2007, and for the avoidance of doubt, nothing shall be interpreted to constitute an amendment or modification of the terms of the NREL Contracts. The stipulated cure amount is $21,313.00, and any available or existing debits, deductions or credits pursuant to the NREL Contracts are preserved and shall inure to the Reorganized Debtor. Kaidi shall give notice to Alliance no later than sixty (60) days from the Effective Date of its intentions with regard to the NREL Contracts including the Kaidi's plans regarding the Reorganized Debtor's operations, including, but not limited to, any proposed exercise of its rights or performance under the NREL Contracts.  For the avoidance of doubt any assumption of the NREL Contracts remains subject to DOE orders and regulations applicable to the CRADA.

e.  The reference to March 30, 2021, in Article XI(2) related to the Effective Date is hereby amended and replaced with April 16, 2021, with such amendment being consented to by the UCC.

3.  <u>Compliance with the Requirements of 11 U.S.C. §1129</u>. The Plan meets all of the requirements of 11 U.S.C. § 1129.

4.  <u>Implementation</u>. The Debtor is authorized to execute, deliver, file, or record documents, contracts, instruments, and other agreements and take all other actions as may be necessary to implement and effectuate the Plan.

5.  <u>Binding Effect</u>. Upon entry of this order and subject to the occurrence of the Plan's Effective Date, the provisions of the Plan shall bind the Debtor, all holders of Claims (irrespective of whether the Claims are impaired under the Plan or whether the claimants have accepted the Plan), any and all non-debtor parties to executory contracts and unexpired leases with the Debtor, any party in interest in the Bankruptcy Case, and the heirs, administrators, executors, successors or assigns, if any, or any of them.

6.  <u>Discharge</u>. Except as provided in 11 U.S.C. § 1141(d) or the Plan or this Order, confirmation of the Plan discharges the Debtor from any debt that arose before confirmation.

7.  <u>Continued Compliance with 28 U.S.C. § 1930</u>. Any statutory fees due to the United States Trustee on or before the Effective Date shall be paid on the Effective Date. Thereafter, all fees required to be paid by 28 U.S.C. § 1930 shall accrue and be paid timely by the Reorganized Debtor until the Bankruptcy Case is closed, dismissed, or converted.

8.  <u>Post-Confirmation Reports</u>. Post-confirmation status reports (using the same form as the applicable official United States Trustee form) must be filed by the Reorganized Debtor or successor entity on a quarterly basis until a final decree is entered or the case is dismissed or converted to another chapter. The reports are to be filed with the Office of the United States Trustee by the 30th day of the month following the end of the calendar quarter. Failure to timely file and complete the report may be grounds to dismiss or convert the case.

9.      <u>Retained Jurisdiction</u>. Pursuant to the Plan and 11 U.S.C. §§ 105 and 1142, this Court retains jurisdiction subsequent to the entry of this Order to enter orders necessary to facilitate the implementation of the Plan and to ensure that the purposes and intent of the Plan are carried out.

10.     <u>Sale of Equity</u>. Pursuant to the Plan, the Debtor is selling the Equity to Kaidi, and the Proceeds of the Sale will be paid to Creditors with Allowed Claims as provided for in the Plan.

11.     <u>Exemption from Transfer Taxes</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with this Plan, including, without limitation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

12.     <u>Status Conference</u>. The Court will not schedule a Status Conference at this time but reserves the right to schedule a Status Conference in this case in the future should the need arise.

**13.     <u>Service of Order</u>.  The Debtor shall, forthwith, mail a copy of this Order to all creditors and interested parties and file a certificate evidencing same <u>on or before April 15, 2021</u>.**

IT IS SO ORDERED.

April 8, 2021

DATED:

BY THE COURT:

_____

Joseph G. Rosania, Jr.,
United States Bankruptcy Judge

- 4 -

# Exhibit 1

## UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                      )
                                            )
SKYFUEL, INC.,                              )        Case No. 19-12400-JGR
                                            )        Chapter 11
           Debtor.                          )

## DISCLOSURE STATEMENT, PURSUANT TO 11 U.S.C. § 1125,
## FOR PLAN OF REORGANIZATION FOR SKYFUEL, INC.

David W. Parham, Esq.
Texas SBN:  15459500
Amy M. Leitch, Esq.
Colorado Bar. No. 46837
**AKERMAN LLP**
2001 Ross Avenue, Suite 3600
Dallas, TX  75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339

## ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION

**DATED: January 29, 2021**

52147633;4

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE DEBTOR'S PLAN OF REORGANIZATION, A COPY OF WHICH IS ATTACHED HERETO AS <u>EXHIBIT A</u>, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

THE PLAN PROVIDES FOR RELEASES OF, AND INJUNCTIVE RELIEF TO PROTECT, CERTAIN PERSONS OR ENTITIES. THE SCOPE OF THE RELEASES AND INJUNCTION ARE DEFINED IN ARTICLE XII OF THE PLAN AND SECTION III OF THE DISCLOSURE STATEMENT. IF THE PLAN IS CONFIRMED, ALL PERSONS AND ENTITIES SPECIFIED IN THESE PROVISIONS OF THE PLAN WILL BE RELEASED FROM THE CLAIMS OF THE DEBTOR AND ANY CREDITOR AND PARTY-IN-INTEREST IN THIS CASE.

THIS DISCLOSURE STATEMENT AND ITS RELEASED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT AND THIS DISCLOSURE IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN. ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE, WHICH ARE OTHER THAN AS CONTAINED HEREIN, SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTOR'S BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED

LARGELY ON THE DEBTOR'S CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES, AND ASSUMPTIONS. IN PARTICULAR, STATEMENTS USING WORDS SUCH AS "BELIEVE," "MAY," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT," AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. CONSEQUENTLY, THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS CONTAINED HEREIN SHOULD NOT BE REGARDED AS REPRESENTATIONS BY THE DEBTOR, THE REORGANIZED DEBTOR, THEIR ADVISORS, OR ANY OTHER PERSON THAT THE PROJECTED FINANCIAL CONDITIONS OR RESULTS OF OPERATIONS CAN OR WILL BE ACHIEVED. EXCEPT AS OTHERWISE REQUIRED BY LAW, NEITHER THE DEBTOR NOR THE REORGANIZED DEBTOR UNDERTAKES ANY OBLIGATIONS TO UPDATE OR REVISE PUBLICLY ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE FOLLOWING APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(B) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING, OR POSSIBLE ADDITIONAL LITIGATION TO BE BROUGHT BY, OR AGAINST, THE DEBTOR, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION, OR A WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER BY ANY PERSON, PARTY OR ENTITY. AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY-IN-INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR.

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY ........................................................................1

   A.  Definitions and Exhibits...........................................................................................2

      (1)  Definitions.......................................................................................................2

      (2)  Exhibits ...........................................................................................................2

   B.  Notice to Creditors ..................................................................................................2

      (1)  Purpose of Disclosure Statement ...................................................................2

   C.  Inquiries ...................................................................................................................4

II.  OVERVIEW OF THE DEBTOR'S OPERATIONS, THE BANKRUPTCY CASE, AND ESTIMATION OF CLAIMS .................................................................................4

   A.  The Debtor's Prepetition Business Operations and Corporate Structure ..................4

   B.  The Bankruptcy Case ...............................................................................................4

      (1)  Commencement of this Bankruptcy Case .......................................................4

      (2)  The Sale Process .............................................................................................4

      (3)  Estimation of Claims.......................................................................................6

III. OVERVIEW OF THE PLAN ..................................................................................6

   A.  General .....................................................................................................................6

   B.  Administrative Expense Claims ...............................................................................6

      (1)  Administrative Expense Claim Applications and Deadline...............................6

      (2)  Treatment of Allowed Administrative Expense Claims ...................................7

      (3)  Administrative Tax Claims ..............................................................................7

      (4)  Section 505......................................................................................................7

   C.  Summary Table of Classification and Treatment of Claims and Equity Interests under the Plan...................................................................................................7

   D.  Provisions Governing Distributions under the Plan...................................................9

      (1)  Record Date for Distributions .........................................................................9

      (2)  Delivery of Distributions .................................................................................9

          (a)  General Provisions; Undeliverable Distributions ................................9

          (b)  Unclaimed Distributions ..................................................................10

      (3)  Transactions on Business Days......................................................................10

      (4)  Time Bar to Cash Payments by Check...........................................................10

      (5)  Compliance with Tax Requirements..............................................................10

      (6)  No Payments of Fractional Dollars ...............................................................11

      (7)  Interest on Claims .........................................................................................11

      (8)  Setoff and Recoupment.................................................................................11

   E.  Means for Implementation and Execution of the Plan............................................11

      (1)  Overview.......................................................................................................11

52147633;4

(2)  Sale of the Debtor's Assets ................................................................................. 11

(3)  Distributions Under the Plan ............................................................................. 12

(4)  Distribution of the Assets Under the Plan ......................................................... 12

(5)  Corporate Existence .......................................................................................... 12

(6)  Vesting of Assets Free and Clear ...................................................................... 12

(7)  No Assumption of Liabilities ............................................................................ 13

(8)  New Organizational Documents ....................................................................... 13

(9)  Directors and Officers of Reorganized Debtor ................................................. 13

(10) Operations of the Debtor Between the Confirmation Date and the Effective Date ........... 13

(11) Term of Injunctions or Stays ............................................................................ 13

F.   Treatment of Disputed Claims and Objections to Claims ........................................... 13

(1)  Objection Deadline ........................................................................................... 13

(2)  Creditor Response to Objection ........................................................................ 14

(3)  No Waiver of Right to Object ............................................................................ 14

(4)  Allowance of Disputed Claims ......................................................................... 14

(5)  Amendments to Claims; Claims Filed After the Confirmation Date ................. 14

(6)  No Distribution Pending Allowance .................................................................. 15

(7)  Disputed Claims Reserve .................................................................................. 15

G.   Treatment of Executory Contracts ............................................................................. 15

H.   Conditions Precedent to Effective Date of the Plan ................................................... 15

(1)  Conditions Precedent to Confirmation and the Effective Date ......................... 15

(2)  Non-Occurrence of the Effective Date .............................................................. 16

(3)  Notice of the Effective Date ............................................................................. 16

I.   Release, Exculpation, Injunction and Related Provisions ........................................... 16

(1)  Compromise and Settlement .............................................................................. 16

(2)  Releases by the Debtor ...................................................................................... 17

(3)  Exculpation ....................................................................................................... 17

(4)  Third Party Releases ......................................................................................... 18

(5)  Injunction .......................................................................................................... 18

(6)  Releases of Liens ............................................................................................... 19

J.   Retention of Jurisdiction ............................................................................................ 19

(1)  Failure of Bankruptcy Court to Exercise Jurisdiction ....................................... 21

(2)  No Creation of Jurisdiction ............................................................................... 21

(3)  Retention and Preservation of General Rights .................................................. 21

(4)  Retention and Preservation of Specific Rights .................................................. 21

K.   Miscellaneous Provisions ........................................................................................... 22

52147633;4

     (1)  Payment of Statutory Fees ........................................................................ 22

     (2)  Modification of Plan .................................................................................. 22

     (3)  Revocation or Withdrawal of the Plan ..................................................... 22

     (4)  Substantial Consummation of Plan ........................................................... 22

     (5)  Exercise of Liens ...................................................................................... 23

     (6)  Rights to Payment, Pro Rata Distributions .............................................. 23

     (7)  Successors and Assigns ............................................................................. 23

     (8)  Binding Effect .......................................................................................... 23

     (9)  Confirmation Order Controls .................................................................... 23

     (10) Governing Law ......................................................................................... 23

     (11) Severability .............................................................................................. 23

     (12) Automatic Stay ......................................................................................... 24

     (13) Reservation of Rights ............................................................................... 24

     (14) Section 1146 Exemption ........................................................................... 24

     (15) Section 1125(e) Good Faith Compliance ................................................. 24

     (16) Further Assurances ................................................................................... 24

     (17) Service of Documents .............................................................................. 24

     (18) Notices and Distributions ........................................................................ 25

     (19) Filing of Additional Documents .............................................................. 25

     (20) Incorporation of Exhibits ........................................................................ 25

     (21) No Admissions ......................................................................................... 25

     (22) No Stay of Confirmation Order ............................................................... 25

     (23) Aid and Recognition ................................................................................ 26

IV.  ALTERNATIVES TO THE PLAN ...................................................................... 26

   A.  Alternative plan ............................................................................................... 26

   B.  Liquidation Under Chapter 7 of the Bankruptcy Code ................................... 26

V.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .................................. 27

VI.  SOLICITATION AND VOTING PROCEDURES .................................................... 27

   A.  Solicitation Package ........................................................................................ 27

     (1)  Contents of Solicitation Package .............................................................. 27

     (2)  Distribution of Solicitation Package ........................................................ 28

   B.  Voting Instructions and General Tabulation Procedures ................................. 28

     (1)  Voting Record Dates ................................................................................ 28

     (2)  Voting Deadline ........................................................................................ 28

     (3)  Tabulation Procedures .............................................................................. 30

VII. CONFIRMATION PROCEDURES ..................................................................... 33

52147633;4

A.   Confirmation Hearing ................................................................................................ 33

B.   Statutory Requirements for Confirmation of the Plan ........................................... 34

    (1)  Best Interests of Creditors Test ................................................................. 35

    (2)  Feasibility .................................................................................................. 36

    (3)  Acceptance by Impaired Classes ............................................................... 36

    (4)  Confirmation Without Acceptance by All Impaired Classes ...................... 37

    (5)  No Unfair Discrimination .......................................................................... 37

    (6)  Fair and Equitable Test .............................................................................. 37

C.   Contact for More Information .............................................................................. 38

VIII.  PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION
AND CONSUMMATION OF THE PLAN ....................................................................... 38

A.   Certain Bankruptcy Law Considerations .............................................................. 38

    (1)  Parties-in-Interest May Object to the Debtor's Classification of Claims and Equity
Interests .................................................................................................... 38

    (2)  Failure to Satisfy Vote Requirement ......................................................... 38

    (3)  Debtor May Not be Able to Secure Confirmation of the Plan ................... 39

    (4)  Nonconsensual Confirmation .................................................................... 39

    (5)  Debtor May Object to the Amount or Classification of a Claim ............... 40

    (6)  Risk of Non-Occurrence of the Effective Date ......................................... 40

    (7)  Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan ....... 40

B.   Risk Factors That May Affect Distributions Under the Plan ................................. 40

    (1)  Debtor Cannot State with any Degree of Certainty What Recovery Will Be
Available to Holders of Allowed Claims in Voting Classes ....................... 40

C.   Disclosure Statement Disclaimer ......................................................................... 40

    (1)  Information Contained Herein is for Soliciting Votes ................................ 40

    (2)  No Legal or Tax Advice is Provided to You by this Disclosure Statement ....... 40

    (3)  No Admissions Made ................................................................................ 41

    (4)  Failure to Identity Litigation Claims or Projected Objections ................... 41

    (5)  No Waiver of Rights to Object or Right to Recover Transfers and Assets ....... 41

    (6)  Information Was Provided by the Debtor and Was Relied Upon by the Debtor's
Advisors .................................................................................................... 41

    (7)  Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update ....... 41

    (8)  No Representations Outside the Disclosure Statement Are Authorized ............ 42

D.   Liquidation Under Chapter 7 ............................................................................... 42

IX.  CONCLUSION ............................................................................................................. 42

## I.   INTRODUCTION AND SUMMARY

This Disclosure Statement ("Disclosure Statement") is Filed pursuant to the requirements of Section 1125 of Title 11 of the United States (the "Bankruptcy Code"). This Disclosure Statement is intended to provide adequate, necessary, and material information to enable holders of Claims in the above-captioned bankruptcy case (the "Bankruptcy Case"), pending before the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"), to make reasonably informed judgments about the Plan of Reorganization (the "Plan") submitted by SkyFuel, Inc. (the "Debtor"). The Debtor is soliciting votes to accept the Plan.

The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled for March 10, 2021, 2021, at 10:00 a.m. (Prevailing Mountain Time).

The Plan provides for a Sale of the equity interests of the Debtor to Zhongxn Kaidi Electric Power Engineering Co., Ltd f/k/a China Kaidi Electric Power Engineering Co., Ltd., and/or its assignee ("Kaidi") for $2,100,000 (the "Purchase Price"), and the payment of Allowed Claims from the Proceeds of the Sale. In particular, the Plan contemplates as follows:

> **(1)**   payment in full in cash by the Debtor or Reorganized Debtor either on or after the Effective Date to holders of Allowed Administrative Expense Claims;

> **(2)**   payment in full in cash by the Debtor or Reorganized Debtor either on or after the Effective Date to holders of Allowed Priority Claims;

> **(3)**   payment in cash by the Debtor or Reorganized Debtor in one or more tranches to holders of Allowed General Unsecured Claims on a pro rata basis, with the first installment of not less than 75% of each Allowed General Unsecured Claim to be made on the Effective Date or as soon as practicable thereafter, and the second installment, if any, which shall consist of the remainder of the Proceeds up to the full amount of each Allowed General Unsecured Claim, to be paid by the 180th day after the Effective Date or as soon as practicable thereafter, not to exceed one (1) year from the Effective Date;

> **(4)**   cancellation of existing Equity Interests on the Effective Date, with the holders of the existing Equity Interests to retain their economic interests to receive the Excess Proceeds after payment of all Allowed Claims, provided, provided, however, that the current holders of Equity Interests will not receive any Distribution under the Plan until holders of Allowed General Unsecured Claims have been paid in full;

> **(5)**   Interests in the Debtor shall be issued to Kaidi and the assets shall be sold, transferred, assigned and conveyed to Kaidi free and clear of all liens, except as set forth in the Plan.

The Debtor believes that the Plan is reasonably calculated to lead to the best possible outcome for all Creditors in the shortest amount of time and is preferable to all other alternatives.

## A.    Definitions and Exhibits

### (1)    Definitions

Unless otherwise defined herein, capitalized terms used in this Disclosure Statement shall have the meanings ascribed to them in the Plan.

### (2)    Exhibits

All exhibits to this Disclosure Statement are incorporated as if fully set forth herein and are part of this Disclosure Statement.

Attached as exhibits to this Disclosure Statement are copies of the following:

> **(a)**    The Plan (Exhibit A); and
>
> **(b)**    The Disclosure Statement Order (Exhibit B).

In addition, one or more ballots (and return envelopes) for voting to accept or reject the Plan, unless you are not entitled to vote to accept or reject the Plan and are deemed to accept or reject the Plan, and therefore, are not entitled to vote, are enclosed. See Article V of the Plan for an explanation of which parties in interest are entitled to vote.

## B.    Notice to Creditors

### (1)    Purpose of Disclosure Statement

The purpose of this Disclosure Statement is to set forth information that (i) summarizes the Plan and alternatives to the Plan, (ii) advises holders of Claims of their rights under the Plan, (iii) assists holders of Claims entitled to vote in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Bankruptcy Court in determining whether the Plan complies with the provisions of Chapter 11 of the Bankruptcy Code and should be confirmed.

**IT IS THE OPINION OF THE DEBTOR THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND CREDITORS. THEREFORE, THE DEBTOR RECOMMENDS THAT CREDITORS VOTE TO APPROVE THE PLAN.**

**PLEASE READ THE DISCLOSURE STATEMENT, INCLUDING THE PLAN, IN ITS ENTIRETY. THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN FOR THE CONVENIENCE OF CREDITORS, BUT THE PLAN ITSELF QUALIFIES ALL SUCH SUMMARIES. ACCORDINGLY, IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.**

52147633;4

On February 3, 2021, after notice and a hearing, the Bankruptcy Court approved the Disclosure Statement (*see* Exhibit B) on an interim basis and will determine on a final basis at the Confirmation whether the Disclosure Statement contains "adequate information" as that term is defined in Section 1125 of the Bankruptcy Code. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . . .

11 U.S.C. § 1125(a)(1).

NO STATEMENTS OR INFORMATION CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY HAVE BEEN AUTHORIZED, OTHER THAN THE STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE INFORMATION ACCOMPANYING THIS DISCLOSURE STATEMENT. ALL OTHER STATEMENTS REGARDING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY, WHETHER WRITTEN OR ORAL, ARE UNAUTHORIZED.

Approval of this Disclosure Statement does not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

The Disclosure Statement Order sets forth in detail the deadlines, procedures, and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan, the record date for voting purposes, and the applicable standards for tabulating ballots. In addition, detailed voting instructions accompany each ballot. Each holder of a Claim entitled to vote on the Plan should read in their entirety the Disclosure Statement, the Plan, the Disclosure Statement Order, and the instructions accompanying the ballots before voting on the Plan. These documents contain, among other things, important information concerning the classification of Claims for voting purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made except pursuant to Section 1125 of the Bankruptcy Code.

### C.      Inquiries

If you have any questions about the packet of materials that you have received, please contact Akerman LLP, 50 North Laura Street, Suite 3100, Jacksonville, Florida 32202, (904) 798-3700, Attn: Amy Leitch.

## II.     OVERVIEW OF THE DEBTOR'S OPERATIONS, THE BANKRUPTCY CASE, AND ESTIMATION OF CLAIMS

### A.      The Debtor's Prepetition Business Operations and Corporate Structure

SkyFuel was founded in 2007 in Arvada, Colorado. SkyFuel is a leading solar thermal power technology and equipment manufacturer. Using its cutting-edge patented technology called SkyTrough and ReflecTech mirror film, SkyFuel supplies utility-scale concentrating solar power systems and a glass-free parabolic trough solar thermal collector. In 2015, SkyFuel was acquired by Harvest International New Energy, Inc., a Delaware entity (the "Parent"), and the U.S. subsidiary of Sunshine Kaidi New Energy Group Co., Ltd., a Chinese entity (the "Ultimate Parent"), to develop renewable energy products. SkyFuel owns one wholly-owned subsidiary, ReflecTech, Inc., which is a non-debtor affiliate of SkyFuel. SkyFuel has intellectual property portfolios in multiple countries, owns registered trademarks, owns patents issued in mirror film and parabolic trough technology, among others, and has multiple patent applications pending.

SkyFuel was in its early stages of commercialization as a development company in the United States when the Ultimate Parent ran into financial constraints and could no longer infuse capital into the Parent or SkyFuel in order to fund operations. Without the financial ability to stand on its own yet, SkyFuel was put into the Chapter 11 bankruptcy process when several of SkyFuel's Creditors and former employees Filed an involuntary petition.

### B.      The Bankruptcy Case

#### (1)      Commencement of this Bankruptcy Case

An involuntary petition for relief against the Debtor under Chapter 11 was Filed on March 29, 2019. The Bankruptcy Case was assigned to Judge Rosania and is administered under Case No. 19-12400-JGR. The Bankruptcy Court entered an order for relief on April 23, 2019. Throughout the Bankruptcy Case, the Debtor has operated and managed its affairs as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On June 27, 2019, the United States Trustee announced the appointment of the Official Committee of Unsecured Creditors (the "UCC"). The UCC is represented by Keri L. Riley of KutnerBrinen, P.C.

The Debtor retained the law firm of Akerman LLP to serve as its bankruptcy counsel.

#### (2)      The Sale Process

On September 27, 2019, the Debtor Filed the *Motion for Entry of an Order (A) Approving Bidding and Auction Procedures for the Sale of Substantially all of the Debtor's Assets, (B) Scheduling an Auction, Sale Hearing, and Other Dates and Deadlines, (C) Authorizing the Debtor*

4

*to Designate a Stalking Horse Purchaser and Grant Stalking Horse Protections, (D) Approving the Procedures for Assumption and Assignment of Contracts and Leases and Related Cure Procedures, and (E) Granting Related Relief* (the "Bid Procedures Motion") [ECF No. 132]. On September 30, 2019, the Debtor Filed a *Motion for Entry of Order (A) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 363(b), 363(f) and 363(m); (B) Assuming and Assigning certain Executory Contracts and Unexpired Leases; and, (C) Granting Related Relief* (the "Sale Motion") [ECF No. 134]. On December 27, 2019, the Debtor Filed an *Amended Bid Procedures Motion* (the "Amended Bid Procedures Motion") [ECF No. 185]. On January 30, 2020, the Bankruptcy Court granted the Amended Bid Procedures Motion (the "Order Approving Amended Bid Procedures Motion") [ECF No. 210].

Both prior and subsequent to the filing of the Bid Procedures Motion and Amended Bid Procedures Motion, the Debtor was engaged in discussions with parties interested in purchasing some or substantially all of the Debtor's assets. Pursuant to the Order Approving Amended Bid Procedures Motion, a sale process was conducted. Kaidi emerged as the highest and best bid. Because no additional bids were received that matched or exceeded Kaidi's bid, Kaidi was selected as the successful bidder and announced in the Bankruptcy Court as such.

Kaidi's winning bid was for a total sale price of $6,000,000 (the "Original Purchase Price"). In connection with its bid and pursuant to the Order Approving Bid Procedures Motion, Kaidi made an initial deposit in the amount of $600,000. Pursuant to Kaidi's bid term sheet ("Bid Term Sheet"), Kaidi was to make an additional deposit in the amount of $1,500,000 (the "Additional Deposit") no later than by March 31, 2020 (the "Additional Deposit Deadline"), and pay the remainder of the Original Purchase Price by closing on or before June 30, 2020.

However, Kaidi was not able to meet the Additional Deposit Deadline or close by the date set forth in the Bid Term Sheet. Kaidi cited several factors that caused delays, including, but not limited to, difficulties and obstacles caused by the novel coronavirus disease (COVID-19) pandemic and restrictions placed on overseas wires.

The Debtor, in consultation with the UCC, engaged in subsequent negotiations with Kaidi and agreed to extend the deadlines set forth in the Bid Term Sheet. Through these negotiations, and pursuant to Kaidi's request, the proposed sale of the Debtor's assets was restructured to be a sale of the Debtor's equity interests (i.e. stock) free and clear of all liens and encumbrances to Kaidi.

On or around October 20, 2020, Kaidi wired the Additional Deposit, yielding a total of $2,100,000 from Kaidi ($600,000 initial bid deposit + $1,500,000 Additional Deposit). However, Kaidi indicated it was having and would continue to face difficulties in wiring the remainder of the Original Purchase Price.

The Debtor, in consultation with the UCC, began to evaluate alternative options in the intervening time period. The Debtor, with the UCC's agreement, ultimately determined to lower the sale price from the Original Purchase Price to the $2,100,000 (the "Purchase Price") already paid in by Kaidi based on several factors, including but not limited to the following: (a) the claims reconciliations performed by the Debtor and the UCC suggest. that the Debtor's creditors will be

paid nearly all, of not all, of their Allowed Claim (and certainly no less than 75% of their Allowed Claim), (b) re-running another sale process would, at the very least, cause additional delay, and (c) the amended Purchase Price was still higher than any other previous bids.

### (3)  Estimation of Claims

Both the Debtor and UCC have reviewed the Claims and believe that the total amount of Allowed Claims, inclusive of Professional Claims, other Administrative Claims and Priority Claims, will be in the range of $1,700,000 and $2,000,000, subject to adjustments warranted through the Claims administration process. Professional Claims and Administrative Expense Claims are accruing and will continue to accrue by the Effective Date and/or through consummation of the Sale.

## III.  OVERVIEW OF THE PLAN

### A.  General

This section of the Disclosure Statement summarizes the Plan, which is set forth in its entirety as Exhibit A hereto. This summary is qualified in its entirety by reference to the Plan. YOU SHOULD READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

### B.  Administrative Expense Claims

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses have not been classified and, thus, are excluded from the Classes of Claims set forth in Article II of the Plan.

### (1)  Administrative Expense Claim Applications and Deadline

Holders of Administrative Expense Claims, including Professional Claims, other than: (i) Allowed Administrative Expense Claims as of the Effective Date; (ii) Administrative Expense Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (iii) Administrative Expense Claims that constitute fees or charges assessed against the Estate under Chapter 11, Title 28, United States Code, must by no later than the Administrative Expense Claims Bar Date: (a) File an application with the Bankruptcy Court for allowance of the Administrative Expense Claim; and (b) serve a copy of such application on the Debtor, the United States Trustee, and all other parties otherwise entitled to notice thereof. Failure to File and serve such application by the Administrative Expense Claims Bar Date shall result in the Administrative Expense Claim being forever barred and discharged as against the Debtor and the Estate, and the property of any of the foregoing including property transferred pursuant to the Plan. Except as specifically provided in the Plan, nothing in the Plan alters the law applicable to, and governing, the allowance of Administrative Expense Claims (including Professional Claims) under the Bankruptcy Code.

(2)     **Treatment of Allowed Administrative Expense Claims**

Except with respect to Administrative Tax Claims, and unless previously paid, and except to the extent that the holder of an Allowed Administrative Expense Claim agrees to different treatment, each holder of an Allowed Administrative Expense Claim, including a Professional Claim, shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Expense Claim, from the Proceeds of the Sale, the amount of such Allowed Administrative Expense Claim, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs within ten (10) Business Days after the later of the (i) Effective Date, or (ii) date such Administrative Expense Claim becomes an Allowed Claim.

(3)     **Administrative Tax Claims**

Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by the Plan, and shall survive the Plan without need for any action on the part of the holder thereof. Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date. Notwithstanding anything contained in the Plan to the contrary, nothing in the Plan transfers or vests any property of the Debtor or the Estate free and clear of any lien securing an Administrative Tax Claim. Any and all rights to contest any Administrative Tax Claim, including as may be appropriate under Section 505 of the Bankruptcy Code, are preserved and transferred to Kaidi as of the Effective Date.

(4)     **Section 505**

For the avoidance of doubt, and without limiting the generality of any similar provision of the Plan, the Debtor and the Estate reserve all rights under Section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said Section 505 with respect thereto.

C.     **Summary Table of Classification and Treatment of Claims and Equity Interests under the Plan**

Claims are divided into three (3) Classes under the Plan, and the proposed treatment of Claims in each Class is described in the Plan and in the chart set forth below. Such classification takes into account the different nature and priority of the Claims. The following table summarizes the various Classes under the Plan:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority Claims | Unimpaired | Deemed to Accept |
| 2 | General Unsecured Claims | Impaired | Entitled to Vote |
| 3 | Equity Interest | Impaired | Deemed to Reject |

7

Class 1 is not impaired under the Plan. Classes 2 and 3 are impaired. The meaning of "impairment," and the consequences thereof in connection with voting on the Plan, are set forth in Section 1124 of the Bankruptcy Code and in Article V of the Plan.

The General Unsecured Claims Class is estimated to recover 75%-100% of its Allowed Claims. In no case will any Creditor receive more than 100% of its Allowed Claim.

The table below reflects the estimated amount of Allowed Claims in each of the Classes, as well as the proposed treatment of each Class under the Plan.

| Class Number | Description of Class | Treatment under Plan and Estimated % Recovery under Plan |
|---|---|---|
| N/A | Administrative Expense Claims | • Estimated Recovery: 100% <br><br> • Not impaired <br><br> • Each holder of an Allowed Administrative Expense Claim shall be paid the full unpaid amount of such Allowed Administrative Expense Claim in cash (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due); (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court, in each case subject to certain provisos set forth in the Plan. |
| Class 1 | Priority Claims | • Estimated Recovery: 100% <br><br> • Not impaired <br><br> • Class 1 Claimants shall receive those amounts that any such Claimants are entitled to receive on account of their Allowed Priority Claims. |
| Class 2 | General Unsecured Claims | • Estimated Recovery: 75%-100% <br><br> • Impaired <br><br> • Holders of Allowed General Unsecured Claims will receive Distributions in one or more tranches, with the first installment of not less than 75% of each Allowed General |

8

| | | |
|---|---|---|
| | | Unsecured Claim to be made on the Effective Date or as soon as practicable thereafter. The second installment, if necessary, will consist of the remainder of Proceeds up to the full amount of each Creditor's Allowed Claim and shall be made by the 180th day after the Effective Date or as soon as practicable thereafter, not to exceed one (1) year from the Effective Date. |
| Class 3 | Equity Interests | • Impaired<br><br>• Existing Equity Interests will be cancelled on the Effective Date. The holders of Equity Interests will retain their economic interests to receive the Excess Proceeds after payment of all Allowed Claims, provided, however, that the holders of Equity Interests will not receive any Distribution under the Plan until the holders of all Allowed General Unsecured Claims have been paid in full. |

### D.   Provisions Governing Distributions under the Plan

#### (1)   Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3011 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making any Distribution with respect to any Claim, the Reorganized Debtor shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the Reorganized Debtor as of the Record Date.

#### (2)   Delivery of Distributions

#### (a)   General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Reorganized Debtor at (i) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (ii) the last known address of such holder if no proof of Claim is Filed or if the Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Reorganized Debtor may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Reorganized Debtor deems appropriate, but no Distribution to any such holder shall be made unless and until the Reorganized Debtor has determined the then-current address of

such holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the Reorganized Debtor shall be returned to, and held in trust by, the Reorganized Debtor until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article VIII of the Plan. The Reorganized Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

### (b)  Unclaimed Distributions

Distributions that are not claimed by the expiration of the later of six (6) months from the Effective Date or ninety (90) days from such Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Reorganized Debtor, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of the applicable period, the Claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Reorganized Debtor to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Reorganized Debtor pursuant to Article VII of the Plan shall be distributed by the Reorganized Debtor to the other holders of Allowed Claims in accordance with the provisions of the Plan.

### (3)  Transactions on Business Days

If the Effective Date or any other date on which a transaction is to occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

### (4)  Time Bar to Cash Payments by Check

Checks issued by the Reorganized Debtor on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to Article VII of the Plan shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Reorganized Debtor as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article VIII of the Plan.

### (5)  Compliance with Tax Requirements

In connection with making Distributions under the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. No Distribution shall be made to or on behalf of a holder of an Allowed Claim pursuant to the Plan unless and until such holder has provided the

10

52147633;4

Reorganized Debtor with any information that applicable law requires the Reorganized Debtor to obtain in connection with making Distributions, including completed IRS Form W9. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months from the date of first notification to the holder of the need for such information or for the cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article VIII of the Plan.

### (6) No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### (7) Interest on Claims

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

### (8) Setoff and Recoupment

The Reorganized Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect therefor, any claims or defenses of any nature whatsoever that the Debtor, its Estate or the Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, its Estate or the Reorganized Debtor of any right of setoff or recoupment that any of them may have against the holder of any Claim.

### E. Means for Implementation and Execution of the Plan

### (1) Overview

The Plan provides for the Distribution of the Proceeds of the Sale, consistent with the priorities set forth in chapter 7 of the Bankruptcy Code.

### (2) Sale of the Debtor's Assets

On January 30, 2020, the Bankruptcy Court entered the Order Approving Amended Bid Procedures. Both prior and subsequent to the entry of the Order Approving Amended Bid

Procedures Motion, the Debtor engaged in discussions with multiple parties interested in purchasing some or all of the Debtor's assets.

The Debtor conducted a sale process pursuant to the Order Approving Amended Bid Procedures and received multiple bids to purchase some or substantially all of the Debtor's assets from various third-parties. On February 7, 2020, Kaidi delivered its Bid Term Sheet to the Debtor, offering to purchase the Debtor's assets for $6,000,000. Kaidi, as the highest and best bid received from any interested party, was announced as the winning bidder.

### (3)   Distributions Under the Plan

The assets available for Distribution under the Plan are comprised of the Proceeds.

### (4)   Distribution of the Assets Under the Plan

The Debtor proposes payment in full in cash to holders of Allowed Administrative Expense Claims and Allowed Priority Claims. The Debtor further proposes payment in cash in one or more tranches to holders of Allowed General Unsecured Claims, with the first installment of not less than 75% of each Allowed General Unsecured Claim to be made on the Effective Date or as soon as practicable thereafter, and the second installment (if necessary) shall consist of the remainder of the Proceeds up to the full amount of each Allowed General Unsecured Claim, to be paid by the 180th day after the Effective Date or as soon as practicable thereafter, not to exceed one (1) year from the Effective Date. Finally, the holders of Equity Interests will receive the Excess Proceeds, provided, however, that they will not receive any Distribution under the Plan until holders of Allowed General Unsecured Claims have been paid in full.

In addition, on the Effective Date, the Debtor will issue new equity interests to Kaidi or its assignee.

### (5)   Corporate Existence

Except as otherwise provided in the Plan, the Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, with all the powers of a corporation pursuant to the applicable law in the jurisdiction in which it is incorporated or formed and pursuant to the respective bylaws or other formation documents in effect prior to the Effective Date, except to the extent such formation documents are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable law).

### (6)   Vesting of Assets Free and Clear

On the Effective Date, and without need for further order, document, or action, all assets of the Estate shall vest in the Reorganized Debtor free and clear of all liens, claims, interests, and encumbrances, except for any lien, claim, interest or encumbrance expressly and specifically provided for, preserved, or created in the Plan. For the avoidance of doubt, any assets vesting in the Reorganized Debtor shall be subject to the obligations undertaken pursuant to the Plan so long as such are owned by the Reorganized Debtor.

52147633;4

(7)    **No Assumption of Liabilities**

The Assumed Liabilities are those debts, liabilities, and obligations of the Debtor and the Estate, at any time prior to the Effective Date, that the Reorganized Debtor specifically and expressly assumes the obligation to pay under the Plan. The Reorganized Debtor does not assume, and shall not be liable for, any debt or liability of the Debtor or the Estate as of the Effective Date, except for: (i) the Assumed Liabilities, as modified in the Plan; and (ii) any other obligations of the Debtor under the Plan.

(8)    **New Organizational Documents**

On or prior to the Effective Date or as soon thereafter as is practicable, the Reorganized Debtor shall, if so required under applicable state law, file its new organizational documents with the applicable Secretaries of State and/or other applicable authorities in its state of incorporation in accordance with the corporate laws of the state of incorporation.

(9)    **Directors and Officers of Reorganized Debtor**

As of the Effective Date, the term of the current sole director of the Debtor shall expire, and Kaidi shall appoint a new director or board of directors in accordance with the respective corporate governing documents.

(10)    **Operations of the Debtor Between the Confirmation Date and the Effective Date**

The Debtor shall continue to operate as Debtor-in-Possession during the period from the Confirmation Date through and until the Effective Date.

(11)    **Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to Sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Case is closed.

F.    **Treatment of Disputed Claims and Objections to Claims**

(1)    **Objection Deadline**

Any objection to a Claim when the Claim is not otherwise Allowed by the Plan must be Filed by the Claims Objection Deadline or be forever barred and waived. Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim. Provided that a claim objection is Filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate. Unless arising from an Avoidance Action, any proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court,

and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date. Nothing in the Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late Filed Claim than such Creditor has.

### (2)   Creditor Response to Objection

With respect to any objection to a Claim when such objection is Filed after the Effective Date but otherwise in compliance with the Plan, the Creditor whose Claim was the subject of the objection must File with the Bankruptcy Court and serve a response to the objection upon the Debtor and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection. Failure to File and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to Creditor of the same.

### (3)   No Waiver of Right to Object

Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan, or the Confirmation Order shall waive, relinquish, release or impair the Debtor's or other appropriate party-in-interest's right to object to any Claim. A Claim that is specifically Allowed in the Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in the Plan.

### (4)   Allowance of Disputed Claims

All Disputed Claims shall be liquidated and determined as follows:

> **(a)**   Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Bankruptcy Rule 9014. However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings. The Debtor may, at its election, make and pursue any objection to a Claim in the form of an adversary proceeding.

> **(b)**   The Debtor shall retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in the Plan.

### (5)   Amendments to Claims; Claims Filed After the Confirmation Date

Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be Filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim Filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

14

52147633;4

### (6)    No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not distribute any cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim. Nothing herein shall preclude the Reorganized Debtor from making Distributions on account of the undisputed portions of Disputed Claims.

### (7)    Disputed Claims Reserve

On or after the Effective Date, the Reorganized Debtor shall be authorized, but not directed, to establish a Disputed Claims Reserve. After the Effective Date, the Reorganized Debtor may, in its sole discretion, hold any property to be Distributed pursuant to the Plan, in the same proportions and amounts as provided for in the Plan, in the Disputed Claims Reserve in trust for the benefit of the holders of Claims ultimately determined to be Allowed after the Effective Date. The Reorganized Debtor shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date solely to the extent of the amounts available in the Disputed Claims Reserve. Any amounts remaining in the Disputed Claims Reserve after satisfaction of all Allowed Disputed Claims shall constitute Proceeds and shall be Distributed in accordance with Article VII of the Plan without any further action or order of the Bankruptcy Court.

### G.    Treatment of Executory Contracts

On the Effective Date, except as otherwise ordered by the Bankruptcy Court and unless previously rejected or subject to a pending motion to reject, all Executory Contracts of the Debtor shall be deemed assumed in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, and assumptions and assignments, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. For the avoidance of doubt, on the Effective Date, **all** intellectual property, including but not limited to the Debtor's license agreements and all acquired and pending patents, shall be deemed assumed.

### H.    Conditions Precedent to Effective Date of the Plan

### (1)    Conditions Precedent to Confirmation and the Effective Date

The Effective Date shall not occur unless all of the following conditions precedent have been satisfied or are waived:

> **(a)**    the Bankruptcy Court has entered the Confirmation Order;

> **(b)**    such Confirmation Order is a Final Order;

15

**(c)**     the Debtor has made an initial Distribution to Allowed General Claims (Class 2);

**(d)**     all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and shall have become binding on all parties thereto; and

**(e)**     a notice of the Effective Date shall have been Filed by the Reorganized Debtor in the Bankruptcy Case.

**(2)**     **Non-Occurrence of the Effective Date**

If the Plan is confirmed but the Effective Date does not occur by November 23, 2010, unless such date is extended with permission of the UCC or by Court order: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of the Plan had not occurred; and (iv) the Plan will be of no further force and effect, with the result that the Debtor and other parties in interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

**(3)**     **Notice of the Effective Date**

On or before three (3) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under the Plan for the filing of Administrative Expense Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

**I.**     **Release, Exculpation, Injunction and Related Provisions**

Article XII of the Plan provides for certain release, exculpation, and related provisions. Importantly, the releases in the Plan that are given on behalf of the Debtor and its Estate relate to acts or omissions, transactions, or other occurrences or circumstance existing or taking place prior to or on the Effective Date.

These provisions are summarized below. In the event of any conflict between this summary and the provisions as they appear in the Plan, the Plan provisions shall govern.

**(1)**     **Compromise and Settlement**

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or

16

settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtor, its Estate and holders of Claims and Equity Interests.

(2)      **Releases by the Debtor**

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, including, without limitation: (i) the satisfaction and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise; and (ii) the services of the Debtor's officers and/or directors, consultants, and the Professionals retained in this Bankruptcy Case in facilitating the expeditious implementation of the sale of substantially all of the Debtor's assets, the Debtor hereby provides a full release, waiver, and discharge to the Released Parties (and each Released Party shall be deemed released and discharged by the Debtor) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, that are based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtor, including, without limitation, those that the Debtor or Reorganized Debtor would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Bankruptcy Case or the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Article XII of the Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (i) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable and reasonable; (iv) approved after due notice and opportunity for hearing; and (v) a bar to the Debtor or the Reorganized Debtor.**

(3)      **Exculpation**

**On the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, Causes of Action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor, the Estate, any Creditor, or any Person may have or be able to assert against: (i) the Debtor, its shareholders and affiliates, and their respective Representatives so long as such claims arise out of the ordinary course of duties; (ii) Akerman LLP and its Representatives, (iii) the UCC so long as such claims arise out of the ordinary course of duties, and (iv) Kutner Brinen, P.C., and its Representatives, solely for any actions or inactions taken by the foregoing in, or arising against the following as a result of, the Bankruptcy Case, the Disclosure Statement,**

17

and the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; provided, however, that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Expense Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released; provided further, however, that nothing in this Plan releases any claim against any of the foregoing for gross negligence, fraud, fraudulent transfers, misappropriation, breach of fiduciary duty, receipt of any unauthorized monies, or intentional act; provided further that nothing in this Plan releases any claim against the foregoing that arises prior to the Bankruptcy Case or after the Effective Date of the Plan.

(4)     **Third Party Releases**

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Releasing Parties shall be deemed to have forever released, waived and discharged all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, that are based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtor, the Bankruptcy Case or the Plan against the Debtor and Released Parties, *provided, however*, that any holder of a Claim or Equity Interest that opts out of the releases on the ballot shall not be a "Releasing Party."

(5)     **Injunction**

Upon confirmation of the Plan and occurrence of the Effective Date, Claimants may not seek payment or recourse against or otherwise be entitled to any Distribution except as expressly provided in the Plan.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from:

    (a)     commencing or continuing in any manner any action or other proceeding of any kind against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;

    (b)     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;

18

(c)     creating, perfecting or enforcing any encumbrance of any kind against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;

(d)     asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor's Estate, the Reorganized Debtor, or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely Filed proof of Claim; or

(e)     commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, its Estate, their successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

### (6)     Releases of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estate shall be fully released and discharged and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor and the Reorganized Debtor.

### J.     Retention of Jurisdiction

Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

(1)     hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

(2)     hear and determine objections (whether Filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

(3)     ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

19

(4)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(5)     construe and to take any action to enforce the Plan and the Confirmation Order;

(6)     issue such orders as may be necessary for the implementation, execution and consummation of the Plan, including the enforcement of any discharge, release, and/or injunction in the Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and the Confirmation Order;

(7)     hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(8)     hear and determine all applications for Administrative Expense Claims;

(9)     hear and determine other issues presented or arising under the Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with the Plan;

(10)    determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(11)    hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(12)    hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Debtor finds it necessary or appropriate to seek an order authorizing the same;

(13)    enter the Final Decree upon proper request;

(14)    command and enjoin any Creditor or Person to comply with the transfer and vesting of assets of the Debtor and the Estate free and clear of liens, claims, interests, and encumbrances, as provided for in the Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by the Plan; and

(15)    hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and Causes of Action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor or the

20

Estate, including, without limitation, matters concerning federal, state, local and other taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

**(1)      Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

**(2)      No Creation of Jurisdiction**

The Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists. For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, or withdrawal of the reference, the Plan does not purport to create or reinstate said jurisdiction; provided, however, that the Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

**(3)      Retention and Preservation of General Rights**

Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in the Plan, any and all rights, property, and interests, regardless of whether they are scheduled, Filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other Person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other Person; (v) rights to any tax refund; and (vi) claims and Causes of Action against any Creditor or Person whatsoever, including for affirmative relief and to reduce any liability, are retained by the Debtor and the Estate and shall vest in the Reorganized Debtor.

**(4)      Retention and Preservation of Specific Rights**

Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the following claims and Causes of Action, which shall in no way be extinguished, released, or prejudiced as a result of the confirmation of the Plan are specifically reserved and retained by the Debtor and the Estate and shall vest in the Reorganized Debtor:

**(a)**      Avoidance Actions;

**(b)**      Accounts Receivable;

**(c)**    claims, Causes of Action, lawsuits, and litigation commenced by the Debtor at any time prior to the Confirmation Hearing, whether in the Bankruptcy Court or otherwise; and

**(d)**    all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to Section 505 of the Bankruptcy Code.

## K.    Miscellaneous Provisions

### (1)    Payment of Statutory Fees

All fees payable pursuant to Section 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Bankruptcy Case on the earlier of when due or the Effective Date, or as soon thereafter as practicable by the Reorganized Debtor.

### (2)    Modification of Plan

Subject to the limitations contained in the Plan: (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### (3)    Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

### (4)    Substantial Consummation of Plan

The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

52147633;4

### (5)    Exercise of Liens

Any lien preserved in the Plan shall, when permitted to be exercised by the Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in the Plan.

### (6)    Rights to Payment, Pro Rata Distributions

For the avoidance of doubt, and withstanding anything herein to the contrary, no interest shall be paid unless expressly provided for in the Plan and all interests will be paid equally within their respective classification on a Pro Rata basis.

### (7)    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### (8)    Binding Effect

The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest in the Bankruptcy Case.

### (9)    Confirmation Order Controls

To the extent there is an inconsistency or ambiguity between any term or provision contained in the Plan and the Confirmation Order, the terms and provisions of the Confirmation Order shall control.

### (10)    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado, without giving effect to the principles of conflict of laws thereof.

### (11)    Severability

Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of the Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtor may, in its discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of the Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

### (12)   Automatic Stay

The automatic stay provided by Section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of the Plan and the Bankruptcy Code shall control.

### (13)   Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the conditions to effectiveness of the Plan shall have been waived or satisfied. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Person or Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (ii) any holder of a Claim or other party-in-interest prior to the Effective Date.

### (14)   Section 1146 Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent contemplated by Section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### (15)   Section 1125(e) Good Faith Compliance

The Debtor and its Representatives shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

### (16)   Further Assurances

The Debtor, the Reorganized Debtor, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### (17)   Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor and/or the Reorganized Debtor, as applicable, shall be sent by first class U.S. mail, postage prepaid as follows:

24

SkyFuel, Inc.
c/o Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Attn: David Parham

with a copy to:

Akerman LLP
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
Attn: Amy Leitch

### (18)     Notices and Distributions

On and after the Effective Date, all notices, requests and Distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Expense Claim Filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor. Any holder of a Claim may designate another address for the purposes of this section by providing the Debtor written notice of such address, which notice will be effective upon receipt by the Debtor as otherwise appropriate.

### (19)     Filing of Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### (20)     Incorporation of Exhibits

Any exhibits to the Plan, or any supplements to the Plan Filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of the Plan if it is intended to address any issue in the Plan and if it is intended to become a part of the Plan.

### (21)     No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability of any Person on any Claim or the propriety of any classification of any Claim.

### (22)     No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

52147633;4

(23)    **Aid and Recognition**

The Debtor or Reorganized Debtor, as the case may be, shall, as needed to effect the terms of the Plan, request the aid and recognition of any court or judicial, regulatory or administrative body in any province or territory of China or any other nation or state.

## IV.    ALTERNATIVES TO THE PLAN

The Debtor has determined that the Plan is the most practical means of providing maximum recoveries to Creditors. This is especially true given that the Equity Interests have been sold for an amount sufficient to pay all Allowed Claims in full. Despite running a fulsome sale process, no other bids were received which would have, after payment of Administrative Expense Claims, provided full payment to General Unsecured Creditors. If the Plan is not confirmed, the potential alternatives include (a) alternatives plans under Chapter 11 (including a liquidation Plan), (b) dismissal of the Bankruptcy Case, or (c) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.

### A.    Alternative plan

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate and propose a different chapter 11 plan or amended plans, which might provide for the liquidation of the Debtor's assets other than as provided in the Plan. However, the Debtor has determined a stand-alone plan of reorganization would not be feasible, given the absence of capital and the fact that some of the Debtor's products were only in the early stage of commercialization. Since a stand-alone plan would not be feasible, and since the auction did not produce another bid at an amount sufficient to pay Administrative Expense Claims and a meaningful dividend to General Unsecured Creditors, the Debtor believes that any alternative chapter 11 plan will be substantially worse than the Plan. Any attempt to formulate an alternative chapter 11 plan would also necessarily delay Creditors' receipt of Distributions yet to be made and would almost certainly provide for smaller Distributions to holders of Allowed Claims than are currently provided for in the Plan. Thus, the Debtor believes that the Plan will enable all Creditors to realize the greatest possible recovery on their respective Claims

### B.    Liquidation Under Chapter 7 of the Bankruptcy Code

If the Plan or any other chapter 11 plan for the Debtor cannot be confirmed under Section 1129(a) of the Bankruptcy Code, the Bankruptcy Case may be converted to a Chapter 7 liquidation case. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. Converting the Bankruptcy Case to Chapter 7 would simply add an additional layer of administrative expenses to the Estate which would substantially reduce and possibly eliminate any funds available for distributiorn to Unsecured Creditors. The proceeds of the liquidation would be distributed to the Creditors and holders of Equity Interests of the Debtor in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtor believes that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority,

26

which would arise by reason of the liquidation; (c) failure to realize the full value of the Debtor's assets; (d) the inability to utilize the work product and knowledge of the Debtor's Professionals; (e) the substantial delay which would elapse before Creditors would receive any distribution in respect of their Claims; and (f) litigation of various issues resolved by the Plan.

The Debtor's consideration of this alternative to the Plan has led the Debtor to conclude that the Plan, in comparison, provides a far greater recovery to Creditors on a more expeditious timetable, and in a manner that minimizes certain inherent risks in any other course of action available to the Debtor.

## V. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES.**

**THE DEBTOR IS NOT AWARE OF ANY ADVERSE TAX CONSEQUENCE TO IT RESULTING FROM CONFIRMATION OF THE PLAN.**

## VI. SOLICITATION AND VOTING PROCEDURES

On February 3, 2021, the Bankruptcy Court entered the Disclosure Statement Order approving the adequacy of the Disclosure Statement on an interim basis and approving the Solicitation Procedures. In addition to approving the Solicitation Procedures, the Disclosure Statement Order established certain dates and deadlines, including the date for the Confirmation Hearing, the deadline for parties to object to confirmation, the Voting Record Date and the Voting Deadline. The Disclosure Statement Order also approved the forms of ballots and certain confirmation-related notices. The Disclosure Statement Order and the Solicitation Procedures should be read in conjunction with the Disclosure Statement. Capitalized terms used herein that are not otherwise defined in the Disclosure Statement or Plan shall have the meanings ascribed to them in the Solicitation Procedures.

### A. Solicitation Package

#### (1) Contents of Solicitation Package

The following materials, all of which shall be submitted to holders of Claims eligible to vote on the Plan on a thumb drive in PDF format, shall constitute the Solicitation Package, provided, however, that all holders of Claims eligible to vote on the Plan shall also receive a paper copy of the Confirmation Hearing Notice and the applicable ballot:

> **(a)** The Plan;
>
> **(b)** The approved Disclosure statement;
>
> **(c)** The Disclosure Statement Order;

**(d)**     The Confirmation Hearing Notice;

**(e)**     The applicable ballot and voting instructions; and

**(f)**     Prepaid return envelope.

Holders of Claims not eligible to vote on the Plan will not receive the full Solicitation Package. Rather, such parties will receive only a hard copy of (i) the Confirmation Hearing Notice and (ii) a Notice of Non-Voting Status.

Notice parties who are not holders of Claims will receive only a hard copy of the Confirmation Hearing Notice alone.

### (2)     Distribution of Solicitation Package

The Debtor shall serve, or cause to be served, all of the materials in the Solicitation Package on all holders of Claims eligible to vote on the Plan as described in Section VI above.

Holders of Priority Claims in (Class 1) are not impaired and conclusively deemed to accept the Plan. Holders of the Equity Interests in Class 3 are impaired but deemed to reject the Plan. Accordingly, such parties will receive only a hard copy of (i) the Confirmation Hearing Notice and (ii) a Notice of Non-Voting Status.

Holders of Claims in Class 2 (Other General Unsecured Claims) are impaired. Accordingly, such holders will also receive a full Solicitation Package.

Consistent with Bankruptcy Rule 2002, the Debtor will also serve by regular U.S. Mail a copy of the Confirmation Hearing Notice on all Creditors, the United States Trustee, counterparties to the Debtor's Executory Contracts that have not yet been assumed or rejected, and all other notice parties appearing in the Debtor's records.

The Confirmation Hearing Notice shall inform parties that the Plan, the Disclosure Statement, the Disclosure Statement Order, and all other Solicitation Package materials (except ballots) can be obtained by contacting counsel for the Debtor via telephone at (904) 798-3700 or email at amy.leitch@akerman.com and referencing "SkyFuel Bankruptcy" in the subject.

### B.     Voting Instructions and General Tabulation Procedures

### (1)     Voting Record Dates

The Bankruptcy Court has approved February 3, 2021 as the Voting Record Date.

### (2)     Voting Deadline

The Bankruptcy Court has approved March 5, 2021 at 5:00 p.m. (Prevailing Mountain Time) as the Voting Deadline. The Debtor may extend the Voting Deadline without further order of the Bankruptcy Court, however, the Debtor will document any such extension in the Voting Report.

For holders of all Claims or Equity Interests, the Debtor will answer questions regarding the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, provide additional copies of all materials and oversee the voting tabulation. The Debtor will also process and tabulate ballots for each Class entitled to vote to accept or reject the Plan.

**TO BE COUNTED AS VOTES TO ACCEPT OR REJECT THE PLAN, BALLOTS CAST BY HOLDERS AND MASTER BALLOTS CAST ON BEHALF OF BENEFICIAL HOLDERS IN CLASSES ENTITLED TO VOTE MUST BE RECEIVED BY THE DEBTOR BY THE VOTING DEADLINE AT THE EMAIL ADDRESS AND/OR PHYSICAL ADDRESS (WHETHER RECEIVED BY FIRST CLASS MAIL, OVERNIGHT COURIER OR PERSONAL DELIVERY) LISTED ON THE APPLICABLE BALLOT. THE BALLOTS WILL CLEARLY INDICATE WHERE THE BALLOT MUST BE RETURNED.**

| Ballots must be **actually received** by the Debtor by the Voting Deadline as follows: |
| --- |
| If sent by **electronic mail**:<br><br>**amy.leitch@akerman.com**<br>Please indicate "SkyFuel Ballot" in the "subject" line of the email |
| If sent by **First Class Mail, Messenger or Overnight Courier**:<br><br>**AKERMAN LLP**<br>**50 North Laura Street, Suite 3100**<br>**Jacksonville, FL 32202**<br>**Attn: Amy Leitch** |
| If you have any questions on the procedures for voting on the Plan, please call counsel for the Debtor at the following telephone number:<br>**(904) 798-3700** |

| **IT IS IMPORTANT TO FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON EACH BALLOT WHEN SUBMITTING A VOTE.** |
| --- |

**EACH BALLOT WILL CONTAIN A PROVISION STATING THAT A VOTING CREDITOR, BY VOTING, ACKNOWLEDGES HIS, HER OR ITS CONSENT TO THE RELEASE, EXCULPATION AND RELEASE PROVISIONS OF THE PLAN, AS FOLLOWS:**

| **If you vote to accept the Plan, you shall be deemed to have consented to the releases contained in Article XII of the Plan. YOU SHOULD CAREFULLY REVIEW SUCH RELEASES PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.** |
| --- |

| The holder identified below votes to (please check one): |
| --- |
| ACCEPT THE PLAN □   REJECT THE PLAN □ |

29

**FOR ANSWERS TO ANY QUESTIONS REGARDING SOLICITATION PROCEDURES, PARTIES MAY CALL COUNSEL FOR THE DEBTOR VIA TELEPHONE AT (904) 798-3700.**

To obtain an additional copy of the Plan, the Disclosure Statement or other Solicitation Package materials (except ballots), please contact counsel for the Debtor via telephone at (904) 798-3700 or email at amy.leitch@akerman.com and reference "SkyFuel Bankruptcy" in the subject.

Ballots received after the Voting Deadline will not be counted by the Debtor in connection with the Debtor's request for confirmation. The method of delivery of ballots to be sent to the Debtor is at the election and risk of each Creditor. Except as otherwise provided, a ballot will be deemed delivered only when the Debtor actually receives the original executed ballot. In all cases, sufficient time should be allowed to ensure timely delivery. The Debtor expressly reserves the right to amend from time to time the terms of the Plan (subject to compliance with the requirements of Section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification).

**(3)     Tabulation Procedures**

In tabulating votes to accept or reject the Plan, the following procedures (the "Tabulation Procedures") shall be used:

**(a)**     Unless otherwise provided in these Tabulation Procedures, a Claim will be deemed temporarily Allowed for voting purposes only in an amount equal to: (i) the liquidated, non-contingent, undisputed amount of such Claim as set forth in the Debtor's Schedules if no proof of claim has been timely Filed in respect of such Claim; or (ii) if a proof of claim has been timely Filed in respect of such Claim, the amount set forth in such proof of Claim;

**(b)**     If a Claim is deemed Allowed under the Plan or in an order of the Bankruptcy Court entered prior to the Voting Record Date, such Claim is allowed for voting purposes in the deemed Allowed amount set forth in the Plan or such order;

**(c)**     If a Claim for which a proof of Claim has been timely Filed is for unknown or undetermined amounts, or is wholly unliquidated or contingent (as determined on the face of the Claim or after a reasonable review of the supporting documentation by the Debtor), and such Claim has not been Allowed, such Claim will be temporarily Allowed for voting purposes only, and not for purposes of allowance or Distribution and accorded one vote and valued at an amount equal to one dollar ($1.00);

**(d)**     If a Claim is listed on a timely Filed proof of Claim as contingent, unliquidated, or disputed in part, such Claim is temporarily Allowed in the amount that is liquidated, non-contingent, and undisputed for

30

voting purposes only, and not for purposes of allowance or Distribution;

**(e)**    If a holder of a Claim identifies a Claim amount in its ballot that is different than the amount otherwise calculated in accordance with the Tabulation Procedures, the Claim will be temporarily Allowed for voting purposes in the amount calculated in accordance with the Tabulation Procedures;

**(f)**    Creditors with Claims that have been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of such Claim, if any, to accept or reject the Plan;

**(g)**    Duplicate Claims within the same Voting Class will be deemed temporarily Allowed for voting purposes only in an amount equal to one such Claim and not in an amount equal to the aggregate of such Claims;

**(h)**    Creditors will not be entitled to vote Claims to the extent such Claims have been superseded and/or amended by other Claims Filed by or on behalf of such Creditors, regardless of whether the Debtor has objected to such earlier Filed Claim;

**(i)**    If the Debtor has served an objection or request for estimation as to a Claim at least ten (10) calendar days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or Distribution, except to the extent and manner as set forth in such objection;

**(j)**    Claims Filed for $0.00 are not entitled to vote; and

**(k)**    Any Class that contains Claims entitled to vote but no votes are returned for such Class shall be deemed to have accepted the Plan.

The following additional procedures will apply:

**(l)**    The voter must complete each section of the ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the ballot. If the party executing the ballot is signing as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or acting in a fiduciary or representative capacity, they should indicate such capacity when signing and, if required or requested by the Debtor or the Bankruptcy Court, must submit evidence satisfactory to the requesting party to so act on behalf of the holder of the Claim.

31

**(m)**    The voter must vote all of its Claims either to accept or reject the Plan. Accordingly, a ballot that partially rejects and partially accepts the Plan will not be counted. To the extent possible, the Debtor shall mail each Claimant holding a Claim in the Voting Class a single ballot on account of the Claims held by such Claimant in the Voting Class.

**(n)**    For purposes of the numerosity requirement of Section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor in a particular Class shall be aggregated as if such Creditor held one Claim in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

**(o)**    If multiple ballots are received from the same voter with respect to the same Claim prior to the Voting Deadline, the last properly executed ballot timely received will be deemed to reflect such voter's intent and will supersede and revoke any prior ballot received.

**(p)**    If a Creditor submits inconsistent ballots, such ballots shall not be counted.

**(q)**    Delivery of a defective or irregular ballot will not be deemed to have been made until such defect or irregularity has been cured or waived by the Debtor. Any waiver by the Debtor of defects or irregularities in any ballot will be detailed in the voting report Filed with this Court by the Debtor. Neither the Debtor, nor any other Person or Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered ballots, nor will any of them incur any liability for failure to provide such notification.

**(r)**    The Debtor is hereby authorized to waive any defects or irregularities as to any particular ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the tabulation report (the "Voting Declaration") prepared by the Debtor.

**(s)**    In addition, the following ballots will not be counted in determining the acceptance or rejection of the Plan:

    i.    any ballot that is illegible or contains insufficient information to permit the identification of the holder:

    ii.    any ballot that (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, and/or (c) partially accepts and partially rejects the Plan;

iii. any ballot cast by a Person who does not hold, or represent a Person that holds, a Claim in the Voting Class;

iv. any ballot received after the Voting Deadline will not be counted unless the Debtor has granted an extension with respect to such ballot. The voter may choose the method of delivery of its ballot to the Debtor at its own risk. Delivery of the ballot will be deemed made only when the original properly executed ballot is actually received by the Debtor;

v. any ballot delivered by any other means not specifically approved herein;

vi. any ballot sent to a Person other than the Debtor; and

vii. any ballot not bearing an original signature if the Debtor receives such ballot by mail or any ballot sent by electronic mail for which an original signature cannot be produced if requested by the Debtor.

## VII.   CONFIRMATION PROCEDURES

### A.   Confirmation Hearing

The Confirmation Hearing will commence on March 10, 2021, 2021, at 10:00 a.m. (Prevailing Mountain Time), before The Honorable Judge Joseph G. Rosania at the United States Bankruptcy Court for the District of Colorado, 721 19th Street, Denver, Colorado 80202. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

**The Plan Objection Deadline is 5:00 p.m. (Prevailing Mountain Time) on March 5, 2021.**

All Plan Objections must be Filed with the Bankruptcy Court and served on the Debtor and certain other parties in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline.

The Debtor's proposed schedule will provide Entities sufficient notice of the Plan Objection Deadline, which will be at least the 28 days as required by Bankruptcy Rule 2002(b). The Debtor believes that the Plan Objection Deadline will afford the Bankruptcy Court, the Debtor and other parties in interest reasonable time to consider the Plan Objections prior to the Confirmation Hearing.

> **THE BANKRUPTCY COURT WILL NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY SERVED AND FLED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.**

33

**Plan Objections must be served on all of the following parties:**

| | |
|---|---|
| **AKERMAN LLP**<br>2001 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>Attn: David Parham<br><br>-and-<br><br>**AKERMAN LLP**<br>50 North Laura Street, Suite 3100<br>Jacksonville, FL 32202<br>Attn: Amy Leitch<br><br>Counsel for the Debtor and Debtor-in-Possession | **UNITED STATES TRUSTEE**<br>Office of the United States Trustee for the District of Colorado<br>1961 Stout Street, Suite 12-200<br>Denver, CO 80294<br>Attn: Alan K. Motes |
| | **CLERK OF THE BANKRUPTCY COURT**<br>United States Bankruptcy Court<br>for the District of Colorado<br>721 19th Street<br>Denver, CO 80202 |
| **KutnerBrinen, P.C.**<br>1660 Lincoln St. Suite 1850<br>Denver, CO 80264<br>Attn: Keri L. Riley<br><br>Counsel for the Official Committee of Unsecured Creditors | |

### B.     Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. The Debtor believes:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as the Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (i) made before the confirmation of the Plan is reasonable; or (ii) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after confirmation of the Plan.

- Either each holder of an impaired Claim has accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on

34

that date under chapter 7 of the Bankruptcy Code, including pursuant to Section 1129(b) of the Bankruptcy Code for Equity Interests deemed to reject the Plan.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to Section 1129(b) of the Bankruptcy Code.

- Except to the extent the holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims, Priority Claims, General Unsecured Claims, and Equity Interests will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successors thereto under the Plan.

- The Debtor has paid the required filing fees pursuant to 28 U.S.C. § 1930 to the clerk of the Bankruptcy Court.

- In addition to the filing fees paid to the clerk of the Bankruptcy Court, the Debtor will pay quarterly fees on the last day of the calendar month, following the calendar quarter for which the fee is owed in each of the Debtor's Bankruptcy Case for each quarter (including any fraction thereof), to the Office of the United States Trustee, until the case is converted or dismissed, whichever occurs first.

### (1)     Best Interests of Creditors Test

Often called the "best interests" test, Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive or retain under the plan property with a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the bankruptcy court must: (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the debtor's chapter 11 case were converted to a chapter 7 case and the assets of the debtor's estate were liquidated; (b) determine the liquidation Distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation distribution to the Plan Distribution that such holder would receive if the Plan were confirmed.

35

In chapter 7 cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for: (i) holders of secured claims (to the extent of the value of their collateral); (ii) holders of priority claims; (iii) holders of unsecured claims; (iv) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (v) holders of equity interests.

The Debtor believes that the value of any Distributions if the Bankruptcy Case were converted to a case under chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Plan because, among other reasons, (i) conversion to chapter 7 would require appointment of a chapter 7 trustee, which likely would delay and reduce the present value of Distributions (*e.g.*, the chapter 7 trustee would likely hire separate counsel, which would incur additional attorneys' fees, and would be statutorily-entitled to a commission in excess of the quarterly fees payable to the United States Trustee in chapter 11); (ii) the fees and expenses of a chapter 7 trustee would likely further reduce cash available for Distribution; and (iii) it is unlikely the assets could be sold for an amount close to the amount that Kaidi has agreed to pay.

### (2)    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization, unless the Plan contemplates such liquidation.

The Plan basically provides for the Sale of the Debtor's equity for an amount sufficient to pay all Allowed Claims in full from the Proceeds. The Plan further authorizes and directs the Debtor to take all actions necessary to implement the Plan.  Accordingly, the Debtor believes that the Plan is per se feasible.

### (3)    Acceptance by Impaired Classes

The Bankruptcy Code requires that, as a condition to confirmation, except as described below, each class of claims or equity interests that is impaired under a plan, accepts the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (i) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (ii) cures any default and reinstates the original terms of such obligation; or (iii) provides that, on the Substantial Consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled or any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.

36

Only one Class is impaired under the Plan, and as a result, the holders of Claims in that Class are entitled to vote on the Plan. Pursuant to Section 1129 of the Bankruptcy Code, the holders of Claims in that Class must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to that Class, and without considering whether the Plan "discriminates unfairly" with respect to that Class, as both standards are described herein. As stated above, a Class of Claims will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims of each such Class (other than any Claims of Creditors designated under Section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

### (4)    Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes entitled to vote on the plan have not accepted it; provided, however, that the plan has been accepted by at least one impaired class. Pursuant to Section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

### (5)    No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### (6)    Fair and Equitable Test

This test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class.

__Unsecured Claims__: The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either: (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or any equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior equity interest any property.

__Equity Interests__: The condition that a plan be "fair and equitable" to a non-accepting class of equity interests includes the requirement that either: (i) the plan provides that each holder of an equity interest in that class receives or retains under the plan on account of that equity interest

37

property of a value, as of the effective date of the plan, equal to the greater of: (a) the allowed amount of any fixed liquidation preference to which such holder is entitled; (b) any fixed redemption price to which such holder is entitled; or (c) the value of such interest; or (ii) if the class does not receive the amount as required under (i) hereof, no class of equity interests junior to the non-accepting class may receive a Distribution under the plan.

To the extent that the General Unsecured Claims Class votes to reject the Plan, the Debtor further reserves the right to seek to modify the Plan.

The Debtor does not believe that the Plan discriminates unfairly against the General Unsecured Claims Class. The Debtor believes that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

### C.  Contact for More Information

Any interested party desiring further information about the Plan may contact legal counsel to the Debtor by writing to Akerman LLP, 50 North Laura Street, Suite 3100, Jacksonville, Florida 32202, Attn: Amy Leitch and/or calling (904) 798-3700, during normal business hours.

## VIII.  PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

### A.  Certain Bankruptcy Law Considerations

### (1)  Parties-in-Interest May Object to the Debtor's Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created three Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

### (2)  Failure to Satisfy Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may seek to accomplish

an alternative chapter 11 plan. There can be no assurance the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

### (3)    Debtor May Not be Able to Secure Confirmation of the Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, including, among other requirements, a finding by the bankruptcy court that: (i) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (ii) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (iii) the value of Distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of Distributions such holders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement, the balloting procedures and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Confirmation of the Plan is also subject to certain conditions as described in the Plan. If the Plan is not confirmed, it is unclear what Distributions, if any, holders of Allowed Claims would receive with respect to their Allowed Claims.

The Debtor, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for confirmation. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such a less favorable treatment could include a Distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no Distribution of property whatsoever under the Plan.

### (4)    Nonconsensual Confirmation

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtor believes that the Plan satisfies these requirements and the Debtor may request such nonconsensual confirmation

39

in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.

### (5) Debtor May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Debtor and the Reorganized Debtor reserve the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim where such Claim is subject to an objection. Any holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated Distributions described in this Disclosure Statement.

### (6) Risk of Non-Occurrence of the Effective Date

Although the Debtor believes that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### (7) Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan

The Distributions available to holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect Distributions available to holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the impaired Class to accept or reject the Plan or require any sort of revote by the impaired Class.

### B. Risk Factors That May Affect Distributions Under the Plan

### (1) Debtor Cannot State with any Degree of Certainty What Recovery Will Be Available to Holders of Allowed Claims in Voting Classes

As indicated, the Distributions available to holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the amount of Allowed Claims exceed the current estimate of Allowed Claims and/or the resulting effects from the coronavirus pandemic.

### C. Disclosure Statement Disclaimer

### (1) Information Contained Herein is for Soliciting Votes

The information contained in this Disclosure Statement is for the purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

### (2) No Legal or Tax Advice is Provided to You by this Disclosure Statement

**This Disclosure Statement is not legal advice to you**. The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each holder of a Claim or an

Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### (3)     No Admissions Made

The information and statements contained in this Disclosure Statement will neither (i) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (ii) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, holders of Allowed Claims or Equity Interests or any other parties-in-interest.

### (4)     Failure to Identity Litigation Claims or Projected Objections

No reliance should be placed on the fact that a particular litigation Claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement. The Debtor and the Reorganized Debtor may seek to investigate Claims, File and prosecute objections to Claims and Equity Interests, and the Reorganized Debtor may object to Claims or bring Causes of Action after the Confirmation or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such Claims, Causes of Action or Objections to Claims.

### (5)     No Waiver of Rights to Object or Right to Recover Transfers and Assets

The vote by a holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor or the Reorganized Debtor to object to that holder's Allowed Claim, or to bring Causes of Action or recover any preferential, fraudulent or other voidable transfer of assets, regardless of whether any Claims or Causes of Action of the Debtor or its Estate are specifically or generally identified herein.

### (6)     Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors

Counsel to the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to the Debtor have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

### (7)     Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update

The Debtor makes the statements contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtor has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure

41

Statement. Further, although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

### (8)   No Representations Outside the Disclosure Statement Are Authorized

No representations concerning or relating to the Debtor, the Bankruptcy Case or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. In deciding whether to vote to accept or reject the Plan, you should not rely upon any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement. You should promptly report unauthorized representations or inducements to the counsel for the Debtor and the United States Trustee.

### D.   Liquidation Under Chapter 7

If the Plan is not confirmed, the Bankruptcy Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the assets of the Debtor for Distribution in accordance with the priorities established by the Bankruptcy Code.

## IX.   CONCLUSION

**THE DEBTOR SUBMITS THAT THE PLAN COMPLIES IN ALL RESPECTS WITH CHAPTER 11 OF THE BANKRUPTCY CODE AND RECOMMENDS TO HOLDERS OF IMPAIRED CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN THAT THEY VOTE TO ACCEPT THE PLAN.**

**THE DEBTOR REMINDS SUCH HOLDERS THAT, TO BE COUNTED, EACH BALLOT, SIGNED AND MARKED TO INDICATE THE HOLDER'S VOTE, MUST BE RECEIVED BY THE DEBTOR NO LATER THAN 5:00 P.M. (PREVAILING MOUNTAIN TIME) ON OR BEFORE MARCH 5, 2021, AT (A) THE FOLLOWING ADDRESS: Akerman LLP, 50 North Laura Street, Suite 3100, Jacksonville, FL 32202, Attn: Amy Leitch, OR (B) THE FOLLOWING EMAIL ADDRESS: amy.leitch@akerman.com.**

# Exhibit A

## UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                   )
                                         )
SKYFUEL, INC.,                           )          Case No. 19-12400-JGR
                                         )          Chapter 11
            Debtor.                      )

## PLAN OF REORGANIZATION FOR SKYFUEL, INC.

David W. Parham, Esq.
Texas SBN:  15459500
Amy M. Leitch, Esq.
Colorado Bar. No. 46837
**AKERMAN LLP**
2001 Ross Avenue, Suite 3600
Dallas, TX  75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339

**ATTORNEYS FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

**DATED: January 29, 2021**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ....................... 1

    A.    Defined Terms ......................................................................................... 1

    B.    Rules of Interpretation ............................................................................ 7

ARTICLE II CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.................. 8

    1.    **Classification Generally**............................................................... 8

    2.    **Unclassified Claims** ..................................................................... 8

    3.    **Classified Claims** ........................................................................ 8

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS ..................................... 8

    1.    **Administrative Expense Claim Applications and Deadline**............................ 8

    2.    **Treatment of Allowed Administrative Expense Claims** ................... 8

    3.    **Administrative Tax Claims** .......................................................... 9

    4.    **Section 505** .................................................................................. 9

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS ........................................... 9

    1.    **Class 1: Priority Claims**................................................................ 9

    2.    **Class 2: General Unsecured Claims** .......................................... 10

    3.    **Class 3: Equity Interests** ............................................................ 10

ARTICLE V ACCEPTANCE OR REJECTION OF PLAN ...................................... 10

    1.    **Impairment Controversies** ......................................................... 10

    2.    **Classes and Claims Entitled to Vote**.......................................... 10

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN........................... 10

    1.    **Overview** ................................................................................... 10

    2.    **Sale of the Debtor's Equity Interest** ............................................ 11

    3.    **Distributions Under this Plan** ..................................................... 11

    4.    **Distribution of the Assets Under this Plan** .................................. 11

    5.    **Corporate Existence**.................................................................. 11

    6.    **Vesting of Assets Free and Clear** ............................................... 11

    7.    **No Assumption of Liabilities** ...................................................... 11

    8.    **New Organizational Documents** ................................................ 12

    9.    **Directors and Officers of Reorganized Debtor** .......................... 12

    10.    **Operations of the Debtor Between the Confirmation Date and the Effective Date** 12

    11.    **Terms of Injunction or Stays** ..................................................... 12

53950471;3

ARTICLE VII TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS .. 12

    1.    **Objection Deadline**................................................................................. 12

    2.    **Creditor Response to Objection** ........................................................ 12

    3.    **No Waiver of Right to Object** ............................................................ 12

    4.    **Allowance of Disputed Claims** ........................................................... 13

    5.    **Amendments to Claims; Claims Filed After the Confirmation Date**............ 13

    6.    **No Distribution Pending Allowance** .................................................. 13

    7.    **Disputed Claim Reserve** .................................................................... 13

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ................................. 14

    1.    **Record Date for Distributions** .......................................................... 14

    2.    **Delivery of Distributions** .................................................................. 14

    3.    **Unclaimed Distributions** .................................................................. 14

    4.    **Transactions on Business Days** .......................................................... 14

    5.    **Time Bar to Cash Payment by Check** ................................................. 15

    6.    **Compliance with Tax Requirements** ................................................. 15

    7.    **No Payments of Fractional Dollars** ................................................... 15

    8.    **Interest on Claims** ............................................................................. 15

    9.    **Setoff and Recoupment** .................................................................... 15

    10.    **Default** ............................................................................................. 15

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................................................................ 16

    1.    **Assumption of Executory Contracts** ................................................. 16

ARTICLE X EFFECTS OF PLAN CONFIRMATION ................................................ 16

    1.    **Discharge** ......................................................................................... 16

    2.    **Plan Injunction** ................................................................................ 16

    3.    **No Liability for Solicitation or Participation** ................................... 17

ARTICLE XI CONDITIONS PRECEDENT .............................................................. 17

    1.    **Conditions Precedent to Confirmation and Effectiveness of Plan** ................ 17

    2.    **Non-Occurrence of the Effective Date** .............................................. 17

    3.    **Notice of the Effective Date** .............................................................. 17

ARTICLE XII RELEASE, INJUNCTIVE AND RELATED PROVISIONS ............................ 17

    1.    **Compromise and Settlement** ............................................................ 17

    2.    **Releases by the Debtor** ..................................................................... 17

    3.    **Exculpation** ...................................................................................... 18

    4.    **Third Party Releases** ........................................................................ 19

    5.    **Injunction** ........................................................................................ 19

2

6.    **Releases of Liens** .................................................................................. 19

ARTICLE XIII RETENTION OF JURISDICTION AND CLAIMS ........................................ 20

1.    **Jurisdiction of Bankruptcy Court** ...................................................... 20

2.    **Failure of Bankruptcy Court to Exercise Jurisdiction** ................... 21

3.    **No Creation of Jurisdiction** ................................................................ 21

4.    **Retention and Preservation of General Rights** ............................... 21

5.    **Retention and Preservation of Specific Rights** ............................... 21

ARTICLE XIV MISCELLANEOUS PROVISIONS ............................................................. 22

1.    **Payment of Statutory Fees** .................................................................. 22

2.    **Modification of this Plan** ..................................................................... 22

3.    **Revocation or Withdrawal of this Plan** ............................................. 22

4.    **Substantial Consummation of Plan** .................................................. 22

5.    **Exercise of Liens** ................................................................................. 22

6.    **Rights to Payment and Pro Rata Distributions** ............................... 23

7.    **Successors and Assigns** ...................................................................... 23

8.    **Binding Effect** ...................................................................................... 23

9.    **Confirmation Order Controls** ............................................................ 23

10.    **Governing Law** .................................................................................... 23

11.    **Severability** .......................................................................................... 23

12.    **Automatic Stay** .................................................................................... 23

13.    **Reservation of Rights** ......................................................................... 23

14.    **Section 1146 Exemption** ...................................................................... 24

15.    **Section 1125(e) Good Faith Compliance** ........................................... 24

16.    **Further Assurances** ............................................................................. 24

17.    **Service of Documents** ......................................................................... 24

18.    **Notices and Distributions** ................................................................... 24

19.    **Filing of Additional Documents** ......................................................... 24

20.    **Incorporation of Exhibits** .................................................................. 25

21.    **No Admissions** ..................................................................................... 25

22.    **No Stay of Confirmation Order** ......................................................... 25

23.    **Aid and Recognition** ........................................................................... 25

ARTICLE XV CONFIRMATION REQUEST ..................................................................... 25

53950471;3

Pursuant to Section 1121 and other applicable sections of the United States Bankruptcy Code, SkyFuel, Inc., the debtor and debtor-in-possession in the above-captioned case (the "Debtor") hereby respectfully proposes the following *Plan of Reorganization for SkyFuel, Inc.*:

## INTRODUCTION

This Plan provides for a Sale of the Equity Interest of the Debtor to Kaidi and the payment of the Proceeds of the Sale to all Creditors with Allowed Claims.

Transmitted with this Plan is a copy of the Disclosure Statement required by Section 1125 of the Bankruptcy Code. The Disclosure Statement is provided to help Creditors understand this Plan. The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business and operations, risk factors, and other related matters. The Disclosure Statement also provides a summary of this Plan. All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement before voting to accept or reject this Plan.

The Debtor believes that this Plan will accomplish the objectives of Chapter 11. Additionally, the Debtor believes that the Plan presents the most advantageous outcome for all the Debtor's Creditors and, therefore, confirmation of the Plan is in the best interests of the Estate. The Debtor recommends that Creditors **vote to accept the Plan**.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.     Defined Terms**

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

1.     "**Accounts Receivable**" means any and all amounts owing to the Debtor or the Estate at any time prior to the Effective Date, even if disputed, unpaid, or subject to litigation.

2.     "**Administrative Tax Claim**" means any *ad valorem* tax claim assessed against, or payable by, the Debtor or the Estate or their property for or on account of a period after the Petition Date.

3.     "**Administrative Expense Claims Bar Date**" means the day that is thirty (30) days after the Effective Date.

4.     "**Administrative Expense Claim**" means a Claim for any cost or expense of administration of the Chapter 11 Bankruptcy Case under Section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.

5.     "**Allowed**" means with respect to any Claim or Equity Interest, except as otherwise provided herein: (i) a Claim or Equity Interest that has been scheduled by the Debtor in its Schedules and not identified as being disputed, contingent or unliquidated and as to which the

Debtor, the Reorganized Debtor or other parties-in-interest have not Filed an objection by the Claims Objection Deadline; (ii) a proof of Claim or Equity Interest that has been timely Filed and as to which the Debtor, the Reorganized Debtor, or other parties-in-interest have not Filed an objection by the Claims Objection Deadline; (iii) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (iv) a Claim or Equity Interest that is allowed: (a) in any stipulation addressing the amount, nature, and priority of the Claim or Equity Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation with the Debtor or the Reorganized Debtor, as applicable, addressing the amount, nature, and priority of the Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (v) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (vi) a Disputed Claim as to which a proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline.

6.      "**Allowed Administrative Expense Claim**" means: (i) an Administrative Expense Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; and (ii) an Administrative Expense Claim which: (a) is incurred by the Debtor after the Petition Date (including gap-period claims) in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Expense Claim status; (b) is not disputed by the Debtor; and (c) does not require approval from the Bankruptcy Court to become Allowed.

7.      "**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

8.      "**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

9.      "**Amended Bid Procedures Motion**" means the Amended Motion for Entry of an Order (A) Approving Bidding and Auction Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction, Sale Hearing, and other Dates and Deadlines, (C) Approving Procedures for the Assumption and Assignment of Contracts and Leases and Related Cure Procedures, and (D) Granting Related Relief dated December 27, 2019 and docketed at ECF No. 185.

10.      "**Assumed Liabilities**" means debts, liabilities, and obligations of the Debtor and the Estate, at any time prior to the Effective Date, that the Reorganized Debtor specifically and expressly assumes the obligation to pay under this Plan.

11.      "**Avoidance Actions**" means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

12.      "**Bankruptcy Case**" means Bankruptcy Case No. 19-12400-JGR in the Bankruptcy Court.

13.      "**Bankruptcy Code**" means 11 U.S.C. §§ 101, et. seq., in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such

amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

14.     "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Colorado, having jurisdiction over the Bankruptcy Case and, by virtue of the automatic reference of all bankruptcy cases implemented by Rule 84.1 of the Local Rules of Practice of the United States District Court for the District of Colorado – Civil, the United States Bankruptcy Court for the District of Colorado.

15.     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

16.     "**Bar Date**" means October 28, 2019, for all Claims.

17.     "**Bid Term Sheet**" means the offer from Kaidi made by letter dated February 7, 2020, and addressed to Counsel for the Debtor, as amended or supplemented.

18.     "**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

19.     "**Causes of Action**" means all claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of any of the Debtor, the Debtor-in-Possession and/or the that are or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

20.     "**Claim**" means a claim against the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is otherwise defined in Section 101(5) of the Bankruptcy Code, and arising or deemed to have arisen at any time prior to the Effective Date.

21.     "**Claims Objection Deadline**" means the date by which parties authorized by the Plan may File any objection to a Claim, which date shall be sixty (60) days after the Effective Date, except with respect to Administrative Expense Claims as otherwise provided for herein and with respect to Disputed Claims.

22.     "**Claims Register**" means the official claims registers in the Debtor's Bankruptcy Case held by the Clerk of the Bankruptcy Court.

23.     "**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

24.     "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

25. "**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

26. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

27. "**Creditor**" means the holder of any Claim entitled to Distributions under this Plan with respect to such Claim.

28. "**Cure Claim**" means a Claim based upon a Debtor's monetary defaults under an executory contract or unexpired lease at the time such contract or lease is assumed by that Debtor under Section 365 of the Bankruptcy Code.

29. "**Debtor**" or "**Debtor-in-Possession**" means the above-captioned debtor and debtor-in-possession specifically identified on the cover page to this Plan.

30. "**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, a Claim or portion thereof that: (i) has been disallowed by a Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not Filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been Filed or deemed Filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

31. "**Disclosure Statement Order**" means the order approving the Disclosure Statement on an interim basis, which was entered by the Bankruptcy Court on February 3, 2021.

32. "**Disclosure Statement**" means the Disclosure Statement for the Debtor's Plan of Reorganization, dated February 5, 2021, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

33. "**Disputed**" means any Claim or any portion thereof which is neither an Allowed Claim nor is a Disallowed Claim as of the close of the Claims Objection Deadline. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of Distribution under this Plan unless the Debtor, the objecting party, and the holder thereof agree otherwise or unless otherwise ordered by the Bankruptcy Court; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, as of the Claims Objection Deadline, shall be a Disputed Claim unless and until the entry of a Final Order providing otherwise.

34. "**Disputed Claims Reserve**" means an appropriate reserve in an amount to be determined by the Reorganized Debtor for Distribution on account of Disputed Claims that are subsequently Allowed after the Effective Date, in accordance with Article VII hereof.

35.     "**Distribution**" means the distribution of the Proceeds of the Sale.

36.     "**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article XI hereof are satisfied.

37.     "**Entity**" means an "entity" (as that term is defined in Section 101(15) of the Bankruptcy Code).

38.     "**Equity Interest**" means any ownership of any equity in the Debtor, including, as may be applicable, any stock or share.

39.     "**Estate**" means the estate of the Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

40.     "**Excess Proceeds**" means the balance of the Proceeds after payment of all Allowed Claims.

41.     "**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date, as such terms are used within Section 365 of the Bankruptcy Code.

42.     "**File**" or "**Filed**" means, with respect to any pleading, entered on the docket of the Bankruptcy Case and properly served in accordance with the Bankruptcy Rules.

43.     "**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

44.     "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired, and no appeal or petition for certiorari has been timely taken or motion for reargument or rehearing has been timely Filed, or as to which any appeal that has been taken or any petition for certiorari or motion for reargument or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

45.     "**General Unsecured Claims**" means any alleged Claim against the Debtor that is not secured by a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, but excluding any Administrative Expense Claim and Priority Claim.

46.     "**Governmental Unit**" means a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

47.     "**Impaired**" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

48.     "**Kaidi**" means Zhongxn Kaidi Electric Power Engineering Co., Ltd f/k/a China Kaidi Electric Power Engineering Co., Ltd., and/or its assignee.

49.     "**Order Approving Amended Bid Procedures Motion**" means the Order (A) Approving Bidding and Auction Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction, Sale Hearing, and other Dates and Deadlines, (C) Approving Cure Procedures for the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief dated January 30, 2020 and docketed at ECF No. 210.

50.     "**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

51.     "**Petition Date**" means March 29, 2019, the date on which an involuntary petition for relief was Filed against the Debtor initiating this Bankruptcy Case.

52.     "**Plan**" means this plan of reorganization Filed by the Debtor, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, which is incorporated herein by reference.

53.     "**Priority Claim**" means any Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or that is a General Unsecured Claim.

54.     "**Pro Rata**" means the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of all Allowed Claims in such Class.

55.     "**Proceeds**" means the net proceeds available from the Sale.

56.     "**Professional**" means any Person employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

57.     "**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

58.     "**Record Date**" means the record date for determining the entitlement of holders of Claims to receive Distributions under the Plan on account of Allowed Claims. The Record Date shall be the date on which the Disclosure Statement Order is entered.

59.     "**Released Parties**" means each of: (a) the Debtor, (b) the UCC, (c), Harvest International New Energy Co., Ltd, and its affiliates, (d) Sunshine Kaidi New Energy Group Co., Ltd. and its affiliates, (e) Yilong Chen, and (f) with respect to each of the foregoing in clauses (a) through (e), its successors and assigns, direct and indirect equity holders, and attorneys.

6

60.     "**Releasing Parties**" means all holders of Claims and Equity Interests; ***provided, however*, that any holder of a Claim or Equity Interest that opts out of the releases in the Plan shall not be a "Releasing Party."**

61.     "**Reorganized Debtor**" means the Debtor on and after the Effective Date.

62.     "**Representatives**" means, with regard to any Entity, its officers, directors, employees, advisors, managers, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals).

63.     "**Sale**" means the sale of the Debtor's Equity Interest to Kaidi for $2,100,000 in cash paid by Kaidi.

64.     "**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs Filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

65.     "**Substantial Consummation**" means the date of the first Distribution to Creditors.

66.     "**UCC**" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Case.

67.     "**Voting Deadline**" means the period established by the Bankruptcy Court within which ballots may be cast on the Plan.

**B.     Rules of Interpretation**

1.     Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*. In construing this Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

2.     Notwithstanding anything herein to the contrary or otherwise, in the event there are any inconsistencies between the terms and conditions of: (a) any Disclosure Statement and this Plan, the terms and conditions of the Plan shall control,  or (b) the Plan and any order confirming this Plan, the order confirming the Plan shall control.

3.     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

4.     All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

1.    **Classification Generally**. All Claims and Equity Interests, except Administrative Expense Claims, are placed in Classes under the Plan. A Claim is classified within a particular Class only to the extent that the Claim qualifies under the description of that Class. A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.    **Unclassified Claims**. Administrative Expense Claims are not classified under this Plan.

3.    **Classified Claims**. Claims and Equity Interests are classified under this Plan as follows:

Class 1:      Priority Claims

Class 2:      General Unsecured Claims

Class 3:      Equity Interests

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

1.    **Administrative Expense Claim Applications and Deadline**. Holders of Administrative Expense Claims, including Professional Claims, other than: (i) Allowed Administrative Expense Claims as of the Effective Date; (ii) Administrative Expense Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (iii) Administrative Expense Claims that constitute fees or charges assessed against the Estate under Chapter 11, Title 28, United States Code, must by no later than the Administrative Expense Claims Bar Date: (a) File an application with the Bankruptcy Court for allowance of the Administrative Expense Claim; and (b) serve a copy of such application on the Debtor, the United States Trustee, and all other parties otherwise entitled to notice thereof. Failure to File and serve such application by the Administrative Expense Claims Bar Date shall result in the Administrative Expense Claim being forever barred and discharged as against the Debtor and the Estate, and the property of any of the foregoing including property transferred pursuant to the Plan. Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Expense Claims (including Professional Claims) under the Bankruptcy Code.

2.    **Treatment of Allowed Administrative Expense Claims**. Except with respect to Administrative Tax Claims, and unless previously paid, and except to the extent that the holder of an Allowed Administrative Expense Claim agrees to different treatment, each holder of an Allowed Administrative Expense Claim, including a Professional Claim, shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Expense Claim, from the Proceeds of the Sale, the amount of such Allowed Administrative Expense Claim, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs

8

within ten (10) Business Days after the later of the (i) Effective Date, or (ii) date such Administrative Expense Claim becomes an Allowed Claim.

3. **Administrative Tax Claims**. Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by the Plan, and shall survive the Plan without need for any action on the part of the holder thereof. Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtor or the Estate free and clear of any lien securing an Administrative Tax Claim. Any and all rights to contest any Administrative Tax Claim, including as may be appropriate under Section 505 of the Bankruptcy Code, are preserved and transferred to Kaidi as of the Effective Date.

4. **Section 505** . For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtor and the Estate reserve all rights under Section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said Section 505 with respect thereto.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS

Except for Administrative Expense Claims, Professional Claims and Administrative Tax Claims, all Claims against and Equity Interests in the Debtor are placed in Classes.

The following table classifies Claims against, and Equity Interests in, the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority Claims | Unimpaired | Deemed to Accept |
| 2 | General Unsecured Claims | Impaired | Entitled to Vote |
| 3 | Equity Interests | Impaired | Deemed to Reject |

1. **Class 1: Priority Claims**

**Identification of Class**. Class 1 consists of Priority Claims against the Debtor.

**Treatment**. Priority Claims entitled to priority treatment pursuant to Section 507(a)(1), (a)(6), (a)(7), (a)(9), and (a)(10) of the Bankruptcy Code, to the extent Allowed, shall be paid in full satisfaction, release and discharge of, and in exchange for, such Allowed Priority Claim, the amount of such Allowed Priority Claim, in cash, and without interest, attorneys' fees, or costs, no later than ten (10) Business Days after becoming Allowed.

**Impairment**. Class 1 is not impaired under this Plan.

2.     **Class 2: General Unsecured Claims**

**Identification of Class**. Class 2 consists of General Unsecured Claims against the Debtor.

**Treatment**. In full satisfaction, release and discharge of, and in exchange for each General Unsecured Claim, each General Unsecured Claim, to the extent Allowed, shall receive Distributions in one or more tranches, with the first installment of not less than 75% of each Allowed General Unsecured Claim to be made on the Effective Date or as soon as practicable thereafter. The second installment, if necessary, will consist of the remainder of Proceeds up to the full amount of each Creditor's Allowed Claim and shall be made by the 180th day after the Effective Date or as soon as practicable thereafter, not to exceed one (1) year from the Effective Date.

**Impairment**. Class 2 is impaired under this Plan.

3.     **Class 3: Equity Interests**

**Identification of Class**. Class 3 consists of all Equity Interests in the Debtor.

**Treatment**. Existing Equity Interests will be cancelled on the Effective Date. The holders of Equity Interests will retain their economic interests to receive the Excess Proceeds after payment of all Allowed Claims, provided, however, that the holders of Equity Interests will not receive any Distribution under the Plan until the holders of all Allowed General Unsecured Claims have been paid in full.

**Impairment**. Class 3 is impaired under this Plan.

# ARTICLE V
## ACCEPTANCE OR REJECTION OF PLAN

1.     **Impairment Controversies**. If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

2.     **Classes and Claims Entitled to Vote**. Class 2 is impaired is entitled to vote on the Plan.

# ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

1.     **Overview**. The Plan provides for a sale of the Equity Interest of the Debtor to Kaidi and the payment to all Creditors with Allowed Claims from the Proceeds of the Sale. Equity Interest holders will retain their economic interests to receive the Excess Proceeds, provided, however, that holders of Equity Interests will not receive any Distribution under the Plan until the holders of Allowed General Unsecured Claims have been paid in full.

2.      **Sale of the Debtor's Equity Interest**. On January 30, 2020, the Bankruptcy Court entered the Order Approving Amended Bid Procedures. Both prior and subsequent to the entry of the Order Approving Amended Bid Procedures Motion, the Debtor engaged in discussions with multiple parties interested in purchasing some or all of the Debtor's assets, and several bidders submitted offers to purchase some or substantially all of the Debtor's Assets. On February 7, 2020, Kaidi delivered its Bid Term Sheet to the Debtor, outlining its offer. Kaidi was the highest and best bid received from any interested party. Through subsequent negotiations and pursuant to Kaidi's request, the proposed sale of the Debtor's Assets was restructured to be a Sale of the Debtor's Equity Interest in accordance with the terms of the Plan.

3.      **Distributions Under this Plan**. The assets available for Distribution under the Plan are comprised of the Proceeds.

4.      **Distribution of the Assets Under this Plan**. The Debtor proposes payment in cash to holders of Allowed Administrative Expense Claims and Allowed Priority Claims. The Debtor further proposes payment in cash in one or more tranches to holders of Allowed General Unsecured Claims, with the first installment of not less than 75% of each Allowed General Unsecured Claim to be made on the Effective Date or as soon as practicable thereafter, and the second installment, if any, will consist of the remainder of Proceeds up to the full amount of each Creditor's Allowed Claim, to be paid by the 180th day after the Effective Date or as soon as practicable thereafter, not to exceed one (1) year from the Effective Date. Finally, the holders of Equity Interests will receive the Excess Proceeds, provided, however, that they will not receive any Distribution under the Plan until holders of Allowed General Unsecured Claims have been paid in full.

In addition, on the Effective Date, the Debtor will issue new Equity Interests to Kaidi.

5.      **Corporate Existence**. Except as otherwise provided in the Plan, the Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, with all the powers of a corporation pursuant to the applicable law in the jurisdiction in which it is incorporated or formed and pursuant to the respective bylaws or other formation documents in effect prior to the Effective Date, except to the extent such formation documents are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable law).

6.      **Vesting of Assets Free and Clear**. On the Effective Date, and without need for further order, document, or action, all assets of the Estate shall vest in the Reorganized Debtor free and clear of all liens, claims, interests, and encumbrances, except any lien, claim, interest or encumbrance expressly and specifically provided for, preserved, or created in this Plan. For the avoidance of doubt, any assets vesting in the Debtor shall be subject to the obligations undertaken pursuant to this Plan so long as such are owned by the Reorganized Debtor.

7.      **No Assumption of Liabilities**. The Assumed Liabilities are those debts, liabilities, and obligations of the Debtor and the Estate, at any time prior to the Effective Date, that the Reorganized Debtor specifically and expressly assumes the obligation to pay under this Plan. The Reorganized Debtor does not assume, and shall not be liable for, any debt or liability of the Debtor or the Estate as of the Effective Date, except for: (i) the Assumed Liabilities, as modified in this Plan; and (ii) any other obligations of the Debtor under the Plan.

8.     **New Organizational Documents**. On or prior to the Effective Date or as soon thereafter as is practicable, the Reorganized Debtor shall, if so required under applicable state law, file its new organizational documents with the applicable Secretaries of State and/or other applicable authorities in its state of incorporation in accordance with the corporate laws of the state of incorporation.

9.     **Directors and Officers of Reorganized Debtor**. As of the Effective Date, the term of the current sole director of the Debtor shall expire, and Kaidi shall appoint a new director or board of directors in accordance with the respective corporate governing documents.

10.     **Operations of the Debtor Between the Confirmation Date and the Effective Date**. The Debtor shall continue to operate as Debtor-in-Possession during the period from the Confirmation Date through and until the Effective Date.

11.     **Terms of Injunction or Stays**. Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to Sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Case is closed.

## ARTICLE VII
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

1.     **Objection Deadline**. Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be Filed by the Claims Objection Deadline or be forever barred and waived. Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim. Provided that a claim objection is Filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate. Unless arising from an Avoidance Action, any proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date. Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late Filed Claim than such Creditor has.

2.     **Creditor Response to Objection**. With respect to any objection to a Claim when such objection is Filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must File with the Bankruptcy Court and serve a response to the objection upon the Debtor and the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection. Failure to File and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to Creditor of the same.

3.     **No Waiver of Right to Object**. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Debtor's or other appropriate party-in-interest's right to object to any Claim.

A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

      4.    **Allowance of Disputed Claims**. All Disputed Claims shall be liquidated and determined as follows:

      (a)    **Application of Adversary Proceeding Rules**. Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Bankruptcy Rule 9014. However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings. The Debtor may, at its election, make and pursue any objection to a Claim in the form of an adversary proceeding.

      (b)    **Offsets**. The Debtor shall retain all rights of offset or recoupment and all counterclaims against any holder of a Disputed Claim, unless specifically released in this Plan.

      5.    **Amendments to Claims; Claims Filed After the Confirmation Date**. Except as otherwise provided in this Plan, and subject to the Bar Date, a Claim may not be Filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in this Plan, any new or amended Claim Filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

      6.    **No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not distribute any cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim. Nothing herein shall preclude the Reorganized Debtor from making Distributions on account of the undisputed portions of Disputed Claims.

      7.    **Disputed Claim Reserve**. On or after the Effective Date, the Reorganized Debtor shall be authorized, but not directed, to establish a Disputed Claims Reserve. After the Effective Date, the Reorganized Debtor may, in its sole discretion, hold any property to be Distributed pursuant to the Plan, in the same proportions and amounts as provided for in the Plan, in the Disputed Claims Reserve in trust for the benefit of the holders of Claims ultimately determined to be Allowed after the Effective Date. The Reorganized Debtor shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date solely to the extent of the amounts available in the Disputed Claims Reserve. Any amounts remaining in the Disputed Claims Reserve after satisfaction of all Allowed Disputed Claims shall constitute Proceeds and shall be Distributed in accordance with Article VII of this Plan without any further action or order of the Bankruptcy Court.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

1.     **Record Date for Distributions**. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3011 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Reorganized Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. In making any Distribution with respect to any Claim, the Reorganized Debtor shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the Reorganized Debtor as of the Record Date.

2.     **Delivery of Distributions**. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Reorganized Debtor at (i) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (ii) the last known address of such holder if no proof of Claim is Filed or if the Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Reorganized Debtor may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Reorganized Debtor deems appropriate, but no Distribution to any such holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the Reorganized Debtor shall be returned to, and held in trust by, the Reorganized Debtor until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article VIII of this Plan. The Reorganized Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

3.     **Unclaimed Distributions**. Distributions that are not claimed by the expiration of the later of six (6) months from the Effective Date or ninety (90) days from such Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Reorganized Debtor, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of the applicable period, the Claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Reorganized Debtor to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Reorganized Debtor pursuant to Article VII of this Plan shall be distributed by the Reorganized Debtor to the other holders of Allowed Claims in accordance with the provisions of this Plan.

4.     **Transactions on Business Days**. If the Effective Date or any other date on which a transaction is to occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

5.       **Time Bar to Cash Payment by Check**. Checks issued by the Reorganized Debtor on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to Article VII of this Plan shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Reorganized Debtor as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article VIII of this Plan.

6.       **Compliance with Tax Requirements**. In connection with making Distributions under the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. No Distribution shall be made to or on behalf of a holder of an Allowed Claim pursuant to the Plan unless and until such holder has provided the Reorganized Debtor with any information that applicable law requires the Reorganized Debtor to obtain in connection with making Distributions, including completed IRS Form W9. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any Governmental Unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six (6) months from the date of first notification to the holder of the need for such information or for the cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article VIII of the Plan.

7.       **No Payments of Fractional Dollars**. Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

8.       **Interest on Claims**. Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

9.       **Setoff and Recoupment**. The Reorganized Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect therefor, any claims or defenses of any nature whatsoever that the Debtor, its Estate or the Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, its Estate or the Reorganized Debtor of any right of setoff or recoupment that any of them may have against the holder of any Claim.

10.      **Default**.  In the event of a default under the Plan by the Reorganized Debtor, the creditor asserting a default shall send written notice of such default by email and first class mail to

the Reorganized Debtor and counsel with a ten (10) day period in which to cure such default. If the Reorganized Debtor fails to cure such default, the creditor asserting a default shall be entitled to exercise all rights under State and Federal Law, including but not limited to commencing an action in Bankruptcy Court to enforce the terms of the Plan.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1.     **Assumption of Executory Contracts**. On the Effective Date, except as otherwise ordered by the Bankruptcy Court and unless previously rejected or subject to a pending motion to reject, all Executory Contracts of the Debtor shall be deemed assumed in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, and assumptions and assignments, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. For the avoidance of doubt, on the Effective Date, **all** intellectual property, including but not limited to the Debtor's license agreements and all acquired and pending patents, shall be deemed assumed.

## ARTICLE X
## EFFECTS OF PLAN CONFIRMATION

1.     **Discharge**. On the Effective Date, and automatically, without need for further document, order, or action, the Debtor is and shall be discharged of all Claims arising prior to the Effective Date pursuant to the provisions of Section 1141(d) of the Bankruptcy Code.

2.     **Plan Injunction**. Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or the Estate or any of their property, or against the Reorganized Debtor or any of its property, on account of a Claim or Debt that is discharged under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor or the Estate or their property, or against the Reorganized Debtor or any of its property, on account of a Claim or Debt that is discharged under this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtor or the Estate or their property, or against the Reorganized Debtor or any of its property, on account of a Claim or Debt that is discharged under this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtor or its property, or against the Reorganized Debtor or any of its property, with respect to any property to be distributed or transferred under the Plan, or Claim that is subject to this Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction ((i) through (iv)) shall not preclude any Person from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, or from appealing the Confirmation Order, or from defending against any action asserted against it by the Debtor (so long as such defense does not include anything more than a setoff and netting of any Claim otherwise discharged in this Plan, and so long as such defense in no way includes any actual recovery by such Person except as any such recovery is expressly provided for in this Plan).

53950471;3

3.     **No Liability for Solicitation or Participation**. Pursuant to Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

## ARTICLE XI
## CONDITIONS PRECEDENT

1.     **Conditions Precedent to Confirmation and Effectiveness of Plan**. The Effective Date shall not occur unless all of the following conditions precedent have been satisfied or are waived: (i) the Bankruptcy Court has entered the Confirmation Order; (ii) such Confirmation Order is a Final Order; (iii) the Debtor has made an initial Distribution to Allowed General Claims (Class 2); (iv) all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and shall have become binding on all parties thereto; and (v) a notice of the Effective Date shall have been Filed by the Reorganized Debtor in the Bankruptcy Case.

2.     **Non-Occurrence of the Effective Date**. If the Plan is confirmed but the Effective Date does not occur by March 30, 2021, unless such date is extended with permission of the UCC or by Court order: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtor and other parties in interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

3.     **Notice of the Effective Date**. On or before three (3) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Expense Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

## ARTICLE XII
## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

1.     **Compromise and Settlement. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtor, its Estate and holders of Claims and Equity Interests.**

2.     **Releases by the Debtor. Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each**

of the Released Parties, including, without limitation: (i) the satisfaction and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise; and (ii) the services of the Debtor's officers and/or directors, consultants, and the Professionals retained in this Bankruptcy Case in facilitating the expeditious implementation of the Sale of substantially all of the Debtor's assets, the Debtor hereby provides a full release, waiver, and discharge to the Released Parties (and each Released Party shall be deemed released and discharged by the Debtor) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, that are based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtor, including, without limitation, those that the Debtor or Reorganized Debtor would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Bankruptcy Case or the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Article XII of the Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (i) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable and reasonable; (iv) approved after due notice and opportunity for hearing; and (v) a bar to the Debtor or the Reorganized Debtor.

3.      **Exculpation**. On the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, Causes of Action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor, the Estate, any Creditor, or any Person may have or be able to assert against: (i) the Debtor, its shareholders and affiliates, and their respective Representatives so long as such claims arise out of the ordinary course of duties; (ii) Akerman LLP and its Representatives, (iii) the UCC so long as such claims arise out of the ordinary course of duties, and (iv) Kutner Brinen, P.C., and its Representatives, solely for any actions or inactions taken by the foregoing in, or arising against the following as a result of, the Bankruptcy Case, the Disclosure Statement, and the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; provided, however, that nothing contained in this Plan or the Confirmation Order shall relieve any of the foregoing from the normal requirements applicable to the allowance of an Administrative Expense Claim or Professional Claim if approval from the Bankruptcy Court for such allowance is required, and no defenses to said allowance are waived or released; provided further, however, that nothing in this Plan releases any claim against any of the foregoing for gross negligence, fraud, fraudulent transfers, misappropriation, breach of fiduciary duty, receipt of any unauthorized monies, or intentional act; provided further that nothing in this Plan releases any claim against the foregoing that arises prior to the Bankruptcy Case or after the Effective Date of the Plan.

4.      **Third Party Releases**. **Except as otherwise expressly provided for in this Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Releasing Parties shall be deemed to have forever released, waived and discharged all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, that are based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date in any way related to the Debtor, the Bankruptcy Case or the Plan against the Debtor and Released Parties, *provided, however*, that any holder of a Claim or Equity Interest that opts out of the releases on the ballot shall not be a "Releasing Party."**

5.      **Injunction**. **Upon confirmation of the Plan and the occurrence of the Effective Date, Claimants may not seek payment or recourse against or otherwise be entitled to any Distribution except as expressly provided in the Plan.**

**Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from:**

**(a)      commencing or continuing in any manner any action or other proceeding of any kind against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;**

**(b)      enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;**

**(c)      creating, perfecting or enforcing any encumbrance of any kind against the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and any of their assets and properties;**

**(d)      asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor's Estate, the Reorganized Debtor, or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely Filed proof of Claim; or**

**(e)      commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.**

**From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, its Estate, their successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

6.      **Releases of Liens**. Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective

Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estate shall be fully released and discharged and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor and the Reorganized Debtor.

**ARTICLE XIII**
**RETENTION OF JURISDICTION AND CLAIMS**

1.      **Jurisdiction of Bankruptcy Court**. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

(a)      hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

(b)      hear and determine objections (whether Filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

(c)      ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(d)      enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)      construe and to take any action to enforce this Plan and the Confirmation Order;

(f)      issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any discharge, release, and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order;

(g)      hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(h)      hear and determine all applications for Administrative Expense Claims;

(i)      hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

(j)      determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)      hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

20

(l)      hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property, in the event the Debtor finds it necessary or appropriate to seek an order authorizing the same;

(m)      enter the Final Decree upon proper request;

(n)      command and enjoin any Creditor or Person to comply with the transfer and vesting of assets of the Debtor and the Estate free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan; and

(o)      hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and Causes of Action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor or the Estate, including, without limitation, matters concerning federal, state, local and other taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

2.      **Failure of Bankruptcy Court to Exercise Jurisdiction**. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth in this Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

3.      **No Creation of Jurisdiction**. This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists. For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, or withdrawal of the reference, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

4.      **Retention and Preservation of General Rights**. Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, any and all rights, property, and interests, regardless of whether they are scheduled, Filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other Person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other Person; (v) rights to any tax refund; and (vi) claims and Causes of Action against any Creditor or Person whatsoever, including for affirmative relief and to reduce any liability, are retained by the Debtor and the Estate and shall vest in the Reorganized Debtor.

5.      **Retention and Preservation of Specific Rights**. Without limiting the effectiveness or generality of the foregoing, and out of an abundance of caution, the following claims and Causes of Action, which shall in no way be extinguished, released, or prejudiced as a result of the

confirmation of this Plan are specifically reserved and retained by the Debtor and the Estate and shall vest in the Reorganized Debtor:

(i)      Avoidance Actions;

(ii)     Accounts Receivable;

(iii)    claims, Causes of Action, lawsuits, and litigation commenced by the Debtor at any time prior to the Confirmation Hearing, whether in the Bankruptcy Court or otherwise; and

(iv)     all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to Section 505 of the Bankruptcy Code.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

1.      **Payment of Statutory Fees**. All fees payable pursuant to Section 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Bankruptcy Case on the earlier of when due or the Effective Date, or as soon thereafter as practicable by the Reorganized Debtor.

2.      **Modification of this Plan**. Subject to the limitations contained in the Plan: (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

3.      **Revocation or Withdrawal of this Plan**. The Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

4.      **Substantial Consummation of Plan**. The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

5.      **Exercise of Liens**. Any lien preserved in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict

conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

6.      **Rights to Payment and Pro Rata Distributions**. For the avoidance of doubt, and withstanding anything herein to the contrary, no interest shall be paid unless expressly provided for in the Plan and all interests will be paid equally within their respective classification on a Pro Rata basis.

7.      **Successors and Assigns**. The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

8.      **Binding Effect**. The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest in the Bankruptcy Case.

9.      **Confirmation Order Controls**. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Plan and the Confirmation Order, the terms and provisions of the Confirmation Order shall control.

10.     **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado, without giving effect to the principles of conflict of laws thereof.

11.     **Severability**. Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtor may, in its discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

12.     **Automatic Stay** . The automatic stay provided by Section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

13.     **Reservation of Rights**. Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the conditions to effectiveness of this Plan shall have been waived or satisfied. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Person or Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (ii) any holder of a Claim or other party-in-interest prior to the Effective Date.

53950471;3

14.     **Section 1146 Exemption**. Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent contemplated by Section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.     **Section 1125(e) Good Faith Compliance**. The Debtor and its Representatives shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

16.     **Further Assurances**. The Debtor, the Reorganized Debtor, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

17.     **Service of Documents**. Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor and/or the Reorganized Debtor, as applicable, shall be sent by first class U.S. mail, postage prepaid as follows:

SkyFuel, Inc.
c/o Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Attn: David Parham

with a copy to:

Akerman LLP
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
Attn: Amy Leitch

18.     **Notices and Distributions**. On and after the Effective Date, all notices, requests and Distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Expense Claim Filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor. Any holder of a Claim may designate another address for the purposes of this section by providing the Debtor written notice of such address, which notice will be effective upon receipt by the Debtor as otherwise appropriate.

19.     **Filing of Additional Documents**. On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

24

20.     **Incorporation of Exhibits**. Any exhibits to this Plan, or any supplements to this Plan Filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

21.     **No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability of any Person on any Claim or the propriety of any classification of any Claim.

22.     **No Stay of Confirmation Order**. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

23.     **Aid and Recognition**. The Debtor or Reorganized Debtor, as the case may be, shall, as needed to effect the terms of the Plan, request the aid and recognition of any court or judicial, regulatory or administrative body in any province or territory of China or any other nation or state.

**ARTICLE XV**
**CONFIRMATION REQUEST**

The Debtor hereby requests confirmation of this Plan pursuant to Section 1129(a) of the Bankruptcy Code or, in the event that this Plan is not accepted by each of those Classes of Claims entitled to vote, Section 1129(b) of the Bankruptcy Code.

53950471;3

# Exhibit B

# UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                    )
                                          )
SKYFUEL, INC.,                            )          Case No. 19-12400-JGR
                                          )          Chapter 11
            Debtor.                       )

---

### ORDER (A) APPROVING ON AN INTERIM BASIS DISCLOSURE STATEMENT, (B) APPROVING PROCEDURES FOR SOLICITATION OF VOTES ON PLAN OF REORGANIZATION, AND (C) SCHEDULING HEARING FOR CONFIRMATION OF PLAN OF REORGANIZATION

---

THIS MATTER came before the Court on the *Debtor's Motion for Entry of an Order (A) Conditionally Approving Disclosure Statement, (B) Approving Procedures For Solicitation Of Votes On Plan of Reorganization, and (C) Scheduling Combined Final Hearing on Approval of Disclosure Statement with Hearing on Confirmation of Plan Of Reorganization* (the "Motion"). The Court, having reviewed the Motion, finds that (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) venue of this matter is proper under 28 U.S.C. §§ 1408 and 1409; (iii) this matter is a core proceeding under 28 U.S.C. § 157(b)(2); (iv) the relief requested in the Motion is in the best interests of the Debtor, its Estate and Creditors, and other parties-in-interest; (v) no objections were received or were overruled or withdrawn; (vi) adequate and proper notice of the Motion has been given, and no other or further notice is necessary; (vii) the form and manner of notice proposed in the Motion for notifying parties in interest about the Plan, the Plan Objection Deadline, and the Confirmation Hearing are reasonable and appropriate under the circumstances, and (viii) good and sufficient cause exists for granting the relief requested in the Motion as set forth in this Order,

IT IS ORDERED that:

1.      The Motion is GRANTED.

2.      The Disclosure Statement is approved on an interim basis and the Disclosure Statement can be used in connection with soliciting votes to accept or reject the Plan.

3.

4.      The form of the Confirmation Hearing Notice attached to the Motion as **Exhibit B** is approved.

5.      The form of the Ballot attached to the Motion as **Exhibit C** is approved.

6.      The form of the Notice of Non-Voting Status attached to the Motion as **Exhibit D** is approved.

7.      The Solicitation Procedures set forth in the Motion are approved and the Debtor is authorized to solicit votes on the Plan in accordance with such procedures.

8. By no later than seven (7) calendar days after the date of this Order, the Debtor must mail the Solicitation Packages in accordance with the Solicitation Procedures.

9. The Voting Record Deadline is the date of entry of this Order.

10. The deadline for votes on the Plan to be submitted and actually received by the Debtor is 5:00 p.m. (Prevailing Mountain Time) on **March 5, 2021** (the "Voting Deadline"). All Ballots must be properly executed, completed, and submitted to the Debtor by first-class U.S. Mail (postage prepaid), overnight delivery, or personal delivery at the following addresses:

> **AKERMAN LLP**
> **50 North Laura Street, Suite 3100**
> **Jacksonville, FL 32202**
> **Attn: Amy Leitch**

11. The Tabulation Procedures are hereby approved and the Debtor is hereby authorized to tabulate the Ballots received in accordance with such procedures.

12. The Debtor must file a ballot tabulation report no later than 5:00 p.m. (Prevailing Mountain Time) on **March 8, 2021**.

13. If the Debtor objects to the allowance of a Ballot for voting purposes, the Debtor or the UCC may file such objection no later than three business days after the Voting Deadline and request a hearing to determine the allowance of such Ballot for voting purposes to be held on or before the date of the confirmation hearing.

14. The deadline to file objections to confirmation of the Plan is **March 5, 2021 by 5:00 p.m.** Prevailing Mountain Time, unless further extended by order of the Court (the "Plan Objection Deadline"). All objections must be in writing, filed with the Court and served on each of the following parties so as to be actually received on or before the Plan Objection Deadline:

| AKERMAN LLP | UNITED STATES TRUSTEE |
|---|---|
| 2001 Ross Avenue, Suite 3600 Dallas, TX 75201 Attn: David Parham | Office of the United States Trustee for the District of Colorado 1961 Stout Street, Suite 12-200 Denver, CO 80294 Attn: Alan K. Motes |
| -and- | |
| AKERMAN LLP 50 North Laura Street, Suite 3100 Jacksonville, FL 32202 Attn: Amy Leitch | |

2

| KutnerBrinen, P.C. | CLERK OF THE BANKRUPTCY |
|---|---|
| 1660 Lincoln St. Suite 1850 | COURT |
| Denver, CO | United States Bankruptcy Court |
| 80264 Attn: Keri | for the District of Colorado |
| L. Riley | 721 19th Street |
| | Denver, CO 80202 |
| Counsel for the Official Committee | |

15.     The Court will only consider timely-Filed written objections to confirmation of the Plan. All objections not timely Filed and served in accordance with the provisions of this Order are deemed waived.

16.     The Court will hold a telephonic preliminary hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing") on **March 10, 2021 at 10:00 a.m. (Prevailing Mountain Time)**. The Court will reserve March 17, 2021 to conduct an evidentiary hearing by Zoom video conference if necessary. Counsel and/or parties should not appear in person. Zoom video conference protocols will be addressed at the preliminary hearing.

17.     The Debtor is authorized and empowered to take all steps and perform all acts reasonably necessary to solicit and tabulate votes with respect to the Plan and otherwise implement and effectuate the terms of this Order.

18.     The Court retains exclusive jurisdiction regarding the interpretation, implementation, and enforcement of this Order.

Dated this   3rd  day of   February   , 2021.

BY THE COURT

Judge Joseph G. Rosania, Jr.
United States Bankruptcy Court